DECISION
William D. Comings, Jr., and Margaret B. Comings (hereinafter "plaintiffs"), as trustees under a Revocable Living Trust instrument dated January 22, 1992, are the owners of three parcels of real estate located in the Town of New Shoreham. They are identified as lots 78, 81, and 82 on plat 9 of the Town of New Shoreham Tax Assessor's plats. The major lot in question (lot 81) was conveyed to plaintiffs by deed dated December 5, 1966. Lots 82 and 78 are small strips of land which plaintiffs acquired later. James Parise and Maureen Parise (hereinafter "defendants") are the owners of the lot adjacent to plaintiffs' property identified as lot 80 on plat 9 of the New Shoreham Tax Assessor's plats. Defendants received a deed to this property on November 30, 1965.
All of the property described herein is part of the "Katahduma Plat." The Katahduma Plat map was recorded on October 1, 1955. It depicts certain "private" rights-of-way intended for use by those who may reside within the bounds of the Katahduma Plat. The plat map contains a "Residential Colony Plan" of which paragraph one provides that the purchase and sale of lots within the Katahduma Plat ". . . shall include mutual and reciprocal rights-of-way . . . on any roadway or path leading to or through the plot, that is shall be established on the property, by all owners of such plots and their households . . ." The defendants' lot is identified as number 15 on the Katahduma Plat and depicts what appears to be an incomplete road, pathway, or driftway running a certain northerly distance from Mohegan Trail. The deed to plaintiffs shows such road, pathway, or driftway on a hand-drawn map which follows the jurat clause of the deed. Said road, pathway, or driftway is indicated by dotted lines which end within the defendants' property formerly known as lot 15. The map does not show any connection to Mohegan Trail. Likewise, the deed to defendants shows a pathway, roadway, or driftway in a map, obviously prepared by the grantors, with said roadway, pathway, or driftway running northerly from Mohegan Trail and then by a series of dashes to the easterly side of lot 16 of the Katahduma Plat.
It is this roadway, pathway, or driftway that is the primary issue in the case. Plaintiffs contend that they have a right-of-way over the defendants' property by virtue of deed and an easement over the defendants' property by prescription. Defendants counter by saying that no right-of-way was created by deed — either through the deed to plaintiffs or the deed to defendants and that plaintiffs have failed to prove a prescriptive easement by clear and convincing evidence. Defendants also counterclaim that they have a right-of-way, as do the other residents of Katahduma Plat, over lots 82 and 78.
The Court heard testimony from plaintiff William Comings, Jr. He stated that his home was constructed in 1971 and 1972. Since then the home has been occupied each summer by either his family or by tenants. His uncontradicted testimony indicates that he, his family, tenants, delivery vehicles, as well as public safety vehicles, used the roadway, pathway, or driftway over defendants' property and that no other route was used by him, his family, tenants, or delivery people to access his home on lot 81. Furthermore, he testified that he used this roadway since purchasing the property in 1966 but not with the frequency since constructing his home in 1972. Margaret B. Comings testified to essentially the same facts as did her husband. Neither Mr. or Mrs. Comings ever asked defendants' permission to use this roadway and were always of the belief that they could use this roadway and to make repairs to it. Mrs. Comings recalls a conversation with Mr. Parise asking her not to scrape the road, but he never mentioned that she could not use the road. To avoid a confrontation, plaintiffs no longer scraped the crown from the road and used fill to fill the ruts. Mrs. Comings testified that in 1994 the road was blocked by a wooden fence and boulder, preventing their use of this road as access to their property. Plaintiffs petitioned the Washington County Superior Court and obtained a temporary restraining order permitting oil deliveries. On a visit in March 1995, plaintiffs saw the defendants' motor vehicle parked in front of the gateway, blocking entrance to this access to their property.
Edith Blane, a longtime, year-round resident of Block Island, testified that she traveled over the roadway in question in the 1950s.
Defendant James Parise testified that in 1976 he heard a backhoe at work on the roadway and went out to stop it from removing the crown. He testified that he told Mrs. Comings that you "can use the road and repair it but you could not use a backhoe." Mr. Parise also testified that in 1973 he overheard a conversation between the grantor, Maynard, and the plaintiffs indicating that the roadway in question was not intended as a right-of-way and that they should not use it. Mr. Parise testified that a gate was needed where the roadway connected to Mohegan Trail to protect his privacy.
David W. Dumas, Esq., an expert in real estate titles and country roads, attempted to sort out the deed descriptions, maps following the jurat clauses, and the Katahduma Plat map, and the language therein. Essentially, Mr. Dumas testified that it was difficult to ascertain what the grantors intended as to the roadway in question.
This Court is not satisfied that an easement or right-of-way was created by deed or the Katahduma Plat map and the language contained therein. In fact, roadways are delineated by solid lines and the Court notes the use of dotted lines for at least a portion of the roadway in question. Attorney Dumas indicated that dotted lines do not create an easement over the defendants' property and the Supreme Court in Robidoux v. Pelletier,120 R.I. 425 at p. 435 (1978), upheld a trial justice's finding that "broken or dotted lines in a subdivision plat map did not establish the grantor's intent to convey an easement — of any kind." At 435. Quite frankly, it is impossible for this Court to discern the grantors' intent as to this pathway, roadway, or driftway. This Court believes that for such an easement or right-of-way to be established by deed, there must be a clear indication in the deeds and plat map than those in this case. Furthermore, the Court cannot or should not guess as to the significance of the dotted lines. See Robidoux at page 440.
On the other hand, this Court is convinced by the evidence adduced at trial — much of it uncontested — that plaintiffs have met their burden by clear and convincing evidence that they have an easement across the land of the defendants by prescription through their open, continuous, notorious, and adverse use of this right-of-way in excess of ten years as a means of access and egress from their property in the Katahduma Plat. This Court finds that the evidence indicates the plaintiffs have used this right-of-way in such a fashion since 1966. It is also clear to the Court that the plaintiffs' use was adverse and not permissive. The confrontation over the scraping of the road and the plaintiffs' acquiescence does not change their use from adverse to permissive. An apparent acquiescence in a particular method of repair does not, in and of itself, remove plaintiffs from their open, continuous, notorious, and adverse claim of right. Plaintiffs continue to repair the road by use of fill and clearing of brush. Nor does seasonal use of the right-of-way hurt plaintiffs. See Palisades Sales Corporation v. Walsh,459 A.2d 933 (R.I. 1983).
Even assuming as a factual matter that Mr. Parise did state to Mrs. Comings that she had permission to use the road, it was insufficient to stop the open, notorious, continuous, and adverse use of the right-of-way under the provisions of § 34-7-6 of our Rhode Island General Laws (as amended), which provides that any interruption of adverse possession must be given in writing to the person claiming that they are using the lands, way, or easement. There was no such notice in this case. Nor was there any recordation of such a notice in the New Shoreham Land Evidence Records.
Having found a private right-of-way inuring to the benefit of plaintiffs, this Court must address two other issues.
First, this Court finds, and the parties appear to agree, that lots 82 and 78 are rights-of-way for the benefit of all those residing in Katahduma Plat. This Court so rules.
As the Court has found a private right-of-way over the defendants' property, the Court wishes to address the concern of the defendants-counterclaimants over their privacy and concern that this private right-of-way not become a public right-of-way. There was evidence of use by the public over this right-of-way. As a result this Court directs the parties to devise a method to prevent public use of this roadway, whether it be a posted sign, a gateway with a key lock, an automatic gate, or some other device to ensure that only plaintiffs, defendants, their guests and invitees have use over it. The parties have thirty days in which to fashion a remedy that is acceptable to them. Absent that, this Court will devise a remedy.
Counsel are invited to prepare an order incorporating the terms of this Court's decision.