**PALISADES SALES CORPORATION**

v.

**James A. WALSH, Jr.**

**No. 80–246–Appeal.**

Supreme Court of Rhode Island.

April 27, 1983.

Mark S. Spangler, Wakefield, for plaintiff.

Howard I. Lipsey, Providence, for defendant.

**OPINION**

SHEA, Justice.

This is an appeal by a plaintiff, Palisades Sales Corporation (Palisades), from a judgment in a civil action in which Palisades sought to enjoin the defendant, James A. Walsh, Jr., from trespassing on Palisades's property and from constructing a road across the property to gain access to Walsh's woodlot. Walsh counterclaimed for injunctive relief to require removal of obstacles he claimed the plaintiff had placed

across the way. Trial was held before a justice of the Superior Court sitting without a jury. The court found by clear and convincing evidence that Walsh had acquired a prescriptive easement entitling him to continued use of the road. It entered an order enjoining the plaintiffs from interfering with his use of the way. We affirm.

In April 1977, Palisades brought suit alleging that Walsh was trespassing and was constructing a fifteen-to twenty-foot-wide road across Palisades's property in South Kingstown, Rhode Island, without permission or legal right. It sought a permanent injunction against defendant's activities, and in addition, $100,000 in damages. Walsh answered, filed a counterclaim, and moved to add John, Thomas, and Walter Jackson as necessary parties plaintiff.[1] The motion was granted. In his counterclaim, defendant conceded that the disputed way, Curry Field Road, crossed land owned by Palisades and by the Jacksons but alleged that the road had been in existence for 100 years and was the sole means of access to a land-locked parcel of property belonging to him in Charlestown, Rhode Island. He claimed he had always had access to the road before it was blocked in 1977 by plaintiffs. The defendant requested that plaintiffs be enjoined from interfering with his use of the road and that they be required to remove the obstacles placed upon it. He also demanded compensatory and punitive damages.[2]

In a trial held in September 1977, substantial testimony concerning the disputed road was presented before a justice of the Superior Court sitting without a jury. David Dumas, a title attorney hired by Palisades, testified that the Palisades property was purchased by Anthony Guarriello, Jr., president of Palisades, in 1969 and that the part of the Jackson property in question

was deeded to the Jacksons in 1963. Mr. Dumas said that defendant Walsh's property was conveyed to a Mary F. Walsh in 1922 and had remained in the Walsh family ever since. This property consisted of a large tract of farmland south of Old Post Road, partly in North Kingstown and partly in South Kingstown, and a smaller tract of woodlot north of Old Post Road in Charlestown. Mr. Dumas explained that the fact that the woodlot was separate and apart from the farmland was typical of farms in the area. He also testified that the Jackson and Palisades properties could be traced to a common grant but that as best as he could determine, the Walsh property had always been a separate title.

As far as the road in question was concerned, Mr. Dumas testified that on examining a 1948 aerial photograph, he had been able to discern a road crossing the New Post Road in a northeasterly direction veering northwest to traverse the northeast corner of the Jackson property and the southwest corner of the Palisades property before it ended in the woods. This road appeared a little clearer on a 1939 aerial photograph.

Anthony Guarriello, Jr. testified about his purchase and use of the Palisades property. When questioned about the disputed road, he said that he had never seen anyone use the path. He had given defendant permission to take a backhoe across the Palisades property to make a percolation test in 1977, but he had granted no other permission to cross his land.

John Jackson, one of the plaintiffs, testified that he too was familiar with the path and that sometime in 1976 or 1977 he had discovered defendant and his wife cutting wood on the section of road located on the Jackson property. He recalled that after he had informed defendant and his wife

---

1.  The Jacksons, in their answer, denied defendant's claims and in a counterclaim alleged that Walsh had trespassed and that he had "brush-cut" the road in question without their permission. Although these plaintiffs had filed a notice of appeal, they never submitted a brief.

2.  Later defendant filed a second counterclaim alleging that as a result of a recent survey, he had discovered that a shed and a retaining wall of Palisades's were located on his land and that therefore Palisades was trespassing and encroaching on his property.

that they were trespassing on his land, they left the area. Mr. Jackson also insisted that he had never given general permission for defendant to cross his land.[3]

The defendant testified that he had lived at Green Hill Farm in Charlestown, Rhode Island, the family farm, from his birth in 1938 until his marriage in 1961, except for two years in the service from 1957 to 1959. Walsh recalled that from the time he was seven or eight years old, he had helped his father cut wood "with either a tractor or old truck, anything that we could haul wood with."[4] He indicated that the Curry Field Road that he had brush-cut in 1977 was the road he and his father used over the years to gain access to their woodlot. Walsh related how they cut wood every year from the time he was eight years old (1946) until he went into the service (1957), averaging as many as three or four trips a year. He also noted that at no time did anyone ever obstruct the path or prevent them from getting their wood.

After returning from the service in 1959, defendant continued to cut wood for his mother and eventually for his own family. He indicated that in these later years he drove a pickup truck for this purpose except for a 1974 trip when a new pickup truck proved too low to go over the road. He had hired Mr. Carpenter to brush-cut the road in 1977 because he did not want his new truck to be ruined and "it was easier to drive it if the center of the road was cut out." He added that this trail was the only way by which he could reach his woodlot.

A number of local residents provided much of the evidence concerning the character of the disputed road. Phillip Greene, a real estate broker and longtime local resident, testified that he was familiar with the road, calling it the Curry Field Path, and that like other trails in the area it was used primarily for woodlot access. To his knowledge, there was sporadic cutting of wood in the area as late as 1940. Mr. Greene said that although by 1962 the trail was "pretty well overgrown" with shrubs, it was passable with a "stripped-down vehicle."

Paul Gibbons, Walsh's cousin, testified that he had worked on the Walshs' potato farm between 1946 and 1950. He described how they had used the Curry Field Road, traveling in a "farm platform truck and a tractor," to gain access to the woodlot when they needed to cut wood.

Trassar Browning testified that he too had worked for defendant's father in the summers and that he had been a close friend of the brother of one of the plaintiffs, one Harold Jackson, who now lives in California. He said that in the early 1940s, the path had been clear enough to travel with a vehicle. In fact, he and Harold Jackson had driven on the Curry Field Road in a Model A to reach a local ice cream parlor. He described the condition of the road at that time as "passable for a car that you didn't particularly care about."

Benjamin S. Carpenter, the farmer who was hired by defendant in 1977 to brush-cut the Curry Field Road, testified about the condition of the trail at that time. He said that although the path contained brush, he had been able to find the road without assistance. Since it was very visible, he had been able to follow its direction very clearly.

Alan J. Easterbrooks, a surveyor hired by Walsh, testified he also was familiar with this path but had learned only recently from Phillip Greene that it was called the "Curry Field Path." He described it as "an old vehicular path * * * overgrown with laurel and jack pine * * * some scrub oak, nothing of any size * * * [with] two wheel

3. Mr. Jackson acknowledged that his father at one time may have granted defendant's father permission to travel on a trail. However, when this matter was explored on cross-and redirect examination, it was concluded that this trail was not the road that is the subject of this litigation.

4. A photograph taken when defendant was twelve years old of the farm tractor used for that purpose was introduced as a full exhibit.

ruts in spots well eroded into surrounding ground banks on either side." He stated that it was possible to take a motor vehicle such as a "pickup truck something [with] relatively high clearance" over the path.[5]

The final evidence presented concerning the nature of this road was the rebuttal testimony of Charles Erban, a carpenter and a caretaker of Mr. Guarriello's house. He had made a rough sketch of the trail showing the location of various tree stumps that he and Mr. Guarriello had observed on the Curry Field Road. They had attempted to gage the age of these tree stumps by counting the tree rings and were able to estimate at least one was as old as twenty-eight years. The sketch showed that some stumps were located on the trial two to four feet from the right-hand edge of the trail. Although he testified that the trail had a constant width of eight feet, he admitted he had failed to make any measurements concerning the distance of the stumps from the left-hand edge of the trail.

After a detailed review of the evidence, the trial justice held that by clear and convincing evidence, defendant had demonstrated that he and "his predecessors in interest [had] acquired by prescription an easement of right-of-way to use the way or roadway over plaintiffs' land."[6]

■ The sole issue before us is whether the evidence was sufficient to satisfy the burden of establishing an easement by prescription. This court has stated repeatedly that one who claims an easement by prescription has the burden of establishing actual, open, notorious, hostile, and continuous use under a claim of right for ten years as required by G.L.1956 (1969 Reenactment) § 34–7–1. Each of these elements must be established by strict proof, that is, by clear and satisfactory evidence. *Altieri v. Dolan,*

R.I., 423 A.2d 482, 483 (1980); *Greenwood v. Rahill,* R.I., 412 A.2d 228, 230 (1980); *Jerry Brown Farm Association Inc. v. Kenyon,* 119 R.I. 43, 51, 375 A.2d 964, 968 (1977). We have also indicated that the determination of whether or not the claimant sustained this burden of proof involves an exercise of factfinding power by the trial justice. His findings of fact are entitled to great weight and will be upheld unless they are clearly wrong or unless the trial justice has misconceived or overlooked material evidence. *See Altieri v. Dolan,* 423 A.2d at 484; *Greenwood v. Rahill,* 412 A.2d at 230; *Jerry Brown Farm Association Inc. v. Kenyon,* 119 R.I. at 52, 375 A.2d at 969.

■ Applying the above standards to the present case, the record indicates that Walsh and his predecessors in interest acquired by prescription an easement to use plaintiffs' land. Walsh's uncontested testimony established that he and his father had openly, adversely, and continuously used the trail to reach the woodlot every year from the time defendant was eight years old (1946) until he entered the service (1957). Paul Gibbons corroborated this claim, testifying that he had worked for defendant's father during part of the period and adding that he in fact had assisted in a wood-cutting expedition. This period alone would more than satisfy the ten-year requirement for the acquisition of an easement by prescription.

■ The seasonal use of this rural path does not impair defendant's claim because it is well settled that even in adverse-possession cases where stricter standards are applied, it is only necessary to show that "the claimant has acted toward the land in question 'as would an average owner, taking properly into account the geophysical na-

---

5. He also testified that his survey revealed that approximately ten feet of a timber retaining wall on the Palisades's property was on the Walsh side of the boundary line and that a small wooden shed was also on Walsh land.

6. The court directed that plaintiffs' prayer for injunctive relief be denied; that defendant's prayer that Palisades and the Jacksons be en-

joined from interfering with his use of the way be granted, and that defendant's second counterclaim be granted—but only to the extent that Palisades was directed to remove the shed, but not the retaining wall that was encroaching on defendant's property. No damages were awarded to either side.

ture of [the] land.'" *Gammons v. Caswell,* R.I., 447 A.2d 361, 368 (1982) (quoting 7 Powell *The Law of Real Property* § 1018 at 740 (1981)). The Curry Field Road crossed undeveloped land and ended in Walsh's woodlot. Therefore, defendant's use of the road is consistent with that use to which others might put it.

Palisades argues that defendant failed to present any evidence establishing the hostile use of the path. The plaintiffs apparently rely on the testimony of Phillip Greene to suggest that the Walshes used the trail with permission of the landowners.[7] There was no competent evidence offered that suggested defendant's use of the land was dependent on permission of plaintiffs. Both John Jackson and Mr. Guarriello testified that neither they, nor to their knowledge their predecessors, had ever given general permission for defendant to cross their land. Even if plaintiffs had granted permission, the acquisition of this easement by Walsh clearly predated the acquisition of the relevant portions of the land by Palisades (1969) or by the Jacksons (1963).

Palisades also asserts that the trial justice misconceived the evidence since defendant did not establish exclusivity of the use of the road. He presumably relies on the testimony of Phillip Greene and Trassar Browning to suggest that others had used the Curry Field Road. This argument is without merit. Unlike the establishment of title by adverse possession, exclusivity is not a necessary element for a valid claim to an easement by prescription. "[I]t is not

necessary that [the claimant] should have been the only one who used or was entitled to use [the land], so long as he used it under a claim of right independently of others." 4 Tiffany, *The Law of Real Property,* § 1199 at 1014 (3rd ed. 1975).[8]

Palisades suggests that defendant's claim in the pleadings that the Curry Field Road is a public way, along with the trial justice's use of the term "public way" in his decision, supports a conclusion that evidence was misconceived by the trial justice. We do not agree. Walsh clearly had the right to offer alternative defenses for his past use of the road across plaintiffs' property and for his right to continue the use thereof. *See Jerry Brown Farm Association Inc. v. Kenyon,* 119 R.I. at 48, 375 A.2d at 967; *Carpenter v. Dos Santos,* 96 R.I. 334, 339, 191 A.2d 282, 284 (1963). Furthermore, a careful reading of the trial justice's decision reveals that although he utilized the phrase "right-of-way" several times in his decision, nowhere did the court find that defendant had established a right-of-way. The trial justice clearly articulated the elements necessary for the acquisition of an easement by prescription when he found:

> "Mr. Walsh and his predecessors in interest, acquired by prescription an easement of right-of-way to use the way or roadway over plaintiffs' land as a result of using this way openly, adversely and continuously for more than the statutory period of ten years."

Palisades makes other claims, all without merit, generally relying upon only a portion of the pertinent evidence and ignoring oth-

---

**7.** The pertinent testimony is as follows:

"Q. Well, based on what you just testified to, let me ask you a *hypothetical question.* Suppose you owned a piece of land that was a woodlot upon which there was a trail. Suppose that trail led to my woodlot. In the context of the times prior to 1930, if I wanted to use that trail to get to my woodlot, what would I have done?"

"A. You would have pretty much used it. Most of these people were all intermarried and interrelated, and so they were * * * it was a common understanding that they were more or less common rights-of-ways * * * I

would just say that they were used as a means of access to get to their land pretty much." (Emphasis added.)

**8.** It is clear that even "long-continued use by footpassers over the [way] * * * cannot establish an easement * * *." *Daniels v. Blake,* 81 R.I. 103, 108, 99 A.2d 7, 10 (1953). *See also* G.L.1956 (1969 Reenactment) § 34–7–4. Therefore, this evidence, as well as additional testimony that there had been some wheeled traffic over the way, undoubtedly was introduced to establish Curry Field Road as a vehicular path.

er explicit testimony by witnesses regarding the nature and the extent of the use.

In conclusion, our reading of the record convinces us that the trial justice was not clearly wrong nor has he overlooked or misconceived material evidence. There is ample evidence to support the trial justice's findings.

The plaintiff's appeal therefore is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court.