BURKE–TARR COMPANY

v.

FERLAND CORPORATION.

No. 97–460–Appeal.

Supreme Court of Rhode Island.

Feb. 10, 1999.

Eugene J. McCaffrey, Jr., Warwick, for Plaintiff.

Jon G. Hagopian, Providence, for Defendant.

Present LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case arose from a complaint filed by the plaintiff, Burke–Tarr Company (Burke–Tarr), to enjoin the defendant, Ferland Corporation (defendant or Ferland), from using a right-of-way across Burke–Tarr's property. Following a trial without the intervention of a jury, a Kent County Superior Court trial justice denied Burke–Tarr's petition for injunctive and declaratory relief. In addition, the trial justice denied Ferland's claim that it had acquired a prescriptive easement over the right-of-way, and after a separate trial on damages, awarded Burke–Tarr $66,706.24 for the fair market value of Ferland's continued and expanded use of the right-of-way. After a recitation of the facts, we shall address all three rulings seriatim.

The record discloses that on January 25, 1911, a deed was recorded in the land evidence records acknowledging the conveyance of land situated in Warwick from John Cassidy (Cassidy) to the Moduc Club. The deed declared a right-of-way seventeen and one-half feet in width, extending from what is now Warwick Avenue over the subject parcel, which is presently owned by Burke–Tarr, and to a cottage on the adjacent property, through which Cassidy reserved a right-of-access until April 1, 1911.

In 1958, Burke–Tarr acquired the subject property, subject to the right-of-way onto the adjacent property of the Moduc Club. In 1967, Alphage Ferland & Sons, Inc., defendant's predecessor in name, acquired the Moduc Club property, and along with additional parcels that were subsequently acquired by Ferland, eventually developed a 191–unit apartment complex. According to counsel at oral argument, this apartment complex consisted of two buildings comprised of forty-two apartment units on the dominant estate, while the remaining units were located on the subsequently acquired parcels. Access to the apartment complex was restricted to the seventeen and one-half foot right-of-way, which is the subject of this dispute, as well as to an additional seven and one-half foot strip of land that Ferland leased from Burke–Tarr in 1970, "so as to constitute a twenty-five (25) foot roadway leading from Warwick Avenue to [Ferland's] land."

According to the fifteen-year lease that the parties executed, Burke–Tarr agreed to lease the seven and one-half foot strip of land to Ferland in exchange for its promises to cause the twenty-five foot roadway to be lighted, maintained, and swept. In addition, Ferland contracted to pave Burke–Tarr's parking lot,

promised to provide for the snow plowing of the twenty-five foot roadway, as well as Burke–Tarr's parking lot, and agreed to pay any increase in taxes for the roadway that would be occasioned by: (1) a revaluation of the land constituting the twenty-five foot roadway, (2) improvements placed thereon, or (3) an increase in the tax rate. Annual rent for the first five years was $1,000 per year, increasing to $1,200 per year for the following five years, and finally increasing to $1,400 per year for the final five years. Shortly after the execution of this lease, Ferland installed a six-inch water line under the seventeen and one-half foot right-of-way in order to provide water to its apartment complex. However, it is significant that the water line also apparently encroached upon the adjacent seven and one-half foot strip of leased land. We note that the fifteen-year lease did not provide for the terms of its eventual expiration, and that the lease was also silent with regard to the installation of underground water and utility lines. Consequently, when the lease expired in 1985, this dispute arose.[1]

Burke–Tarr instituted an action for trespass and ejectment in the District Court with regard to the seven and one-half foot strip of land. On December 17, 1986, judgment for possession of the strip was entered in favor of Burke–Tarr, along with monetary damages. On February 11, 1987, this judgment became final upon the filing of a stipulation that dismissed Ferland's appeal to the Superior Court.

On June 12, 1987, Burke–Tarr filed a notice of intent with the city of Warwick disputing the creation or the existence of any rights that may have accrued to Ferland from the use of the seventeen and one-half foot right-of-way. Neither content with nor complacent about Ferland's continued use of the right-of-way, Burke–Tarr instituted this action in the Superior Court on March 18, 1988, which sought permanently to enjoin Ferland from any encroachment upon either the seventeen and one-half foot right-of-way or the seven and one-half foot strip.[2] Burke–Tarr subsequently amended its complaint to seek an injunction to restrain Ferland, its licensees, and its invitees from using the roadway, *inter alia*, because it was overburdened and excessively used by Ferland. Ferland responded by filing an answer and a counterclaim to enjoin Burke–Tarr from interfering with the continued maintenance of the utility lines and argued that its continued use had ripened into an easement by prescription.

This case was tried by a justice of the Superior Court sitting without a jury. A written decision was issued on September 11, 1995, in which the trial justice declined to grant either Burke–Tarr's request for injunctive relief or its declaration that the right-of-way be extinguished. Specifically, the trial justice found that Burke–Tarr had failed to demonstrate the existence of any irreparable harm due to Ferland's use of the right-of-way and stated that Burke–Tarr's business was in no way harmed or impeded by the contested use of the right-of-way. Furthermore, the trial justice noted that the existence of the subterranean water line upon the right-of-way "was at all times known by [Burke–Tarr] and was effected with [Burke–Tarr's] tacit knowledge and consent." As a result, the trial justice declined to award injunctive relief, which would have included the removal of electrical lines, water lines, and asphalt paving. In addition, the trial justice denied Ferland's claim that it had acquired a prescriptive easement "over and in [Burke–Tarr's] property by an open notorious and hostile taking of the property by

---

1. The state of Rhode Island apparently attempted to acquire the entire twenty-five foot roadway through eminent domain proceedings. In 1986, however, a Superior Court trial justice declared that a portion of the attempted condemnation was void as against public policy on the ground that the state was not taking the property for a public purpose. We note, however, that the state of Rhode Island does have title to approximately 219 feet of the roadway, which begins at the westerly side of Warwick Avenue.

2. Although not a model of clarity, Burke–Tarr's original complaint appears to seek injunctive relief with regard to both the seventeen and one-half foot right-of-way and the seven and one-half foot strip. This lack of clarity, however, is of no moment to our analysis since Burke–Tarr's amended complaint refers to the entire twenty-five foot roadway.

[Ferland's] installation and maintenance of the water line, and asphalt paving over and in the right-of-way described in the 1911 deed." However, the trial justice did award Burke–Tarr $66,706.24 for the fair rental value of the seven and one-half foot strip, "plus the fair rental value of the realty for installation of the waterline, plus the adverse effect on the remainder of Burke–Tarr's fee estate as a result of the installation and use of the waterline which resulted in more noise and congestion ." Because we conclude that the trial justice erred in denying Ferland's claim for a prescriptive easement with regard to the subterranean water line, we vacate the award of monetary damages; however, we affirm the trial justice's decision with respect to the denial of Burke–Tarr's petition for declaratory and injunctive relief. We shall commence our analysis with Burke–Tarr's claim that the trial justice erred in declining to extinguish the easement over the seventeen and one-half foot right-of-way.

**Extinguishment of the Easement**

In this case, the trial justice declared that the easement that had been created in 1911 to access "a single cottage" had increased demonstrably due to the traffic generated by the residents of the 191 apartment units that were located on the dominant estate. Although the trial justice found that "[t]o a casual observer, the right-of-way over the subject property would plainly be mistaken for a public roadway," he nonetheless determined that Burke–Tarr had cooperated with the increased intensity when it entered into the fifteen-year lease, which countenanced widening, paving, and lighting the right-of-way.

On appeal, Burke–Tarr argues that the trial justice erred by refusing to order the extinguishment of the right-of-way, and hence awarded Ferland greater rights than it had acquired through the lease. In addition, Burke–Tarr contends that the trial justice's decision to grant Ferland the right to the increased use of the right-of-way, in effect, awarded Ferland a greater interest in Burke–Tarr's property than was granted by the lease. These arguments are incorrect, however, and overlook the simple fact that the easement created in 1911 was an unre-

stricted grant to the Moduc Club to use the right-of-way in order to access the dominant estate.

■ The findings of fact by a trial justice sitting without a jury are entitled to great weight and shall not be disturbed on appeal unless the record shows that the findings are clearly wrong or unless the trial justice overlooked or misconceived material evidence on a controlling issue. See *Thomas v. Ross*, 477 A.2d 950, 953 (R.I.1984). After reviewing the record, we are satisfied that even though the trial justice did not overlook any material evidence, he nonetheless erred in interpreting the 1911 easement as intending to access "a single cottage."

In this case, the trial justice analogized the instant situation to *Frenning v. Dow*, 544 A.2d 145 (R.I.1988), where an easement was created before the widespread use of the automobile and was designed to service over one-hundred acres of farmland in the dominant tenement. Over the years, and through the acquisition of contiguous parcels of land, the size of the dominant tenement increased to 257 acres. *Id.* at 145. The trial justice in *Frenning* found that the enhanced parcel led to the increased use of the easement, and consequently, the easement had been extinguished. *Id.* at 146. We reversed this decision and recognized that courts of equity do not favor the extinguishment of an easement on the ground that it had been overburdened by increased use. *Id.* at 146–47. Instead, we favored the general rule that courts of equity should fashion injunctive relief designed to preserve to the owner of the dominant estate that to which he or she is entitled, and impose upon the servient estate only the burden that was originally contemplated. *Id.* at 146 (citing *Penn Bowling Recreation Center, Inc. v. Hot Shoppes, Inc.*, 179 F.2d 64, 66 (D.C.Cir.1949)). In addition, this Court previously has stated that a right-of-way will be construed in favor of the grantee, limited only by what is reserved expressly in the instrument and the accompanying circumstances to demonstrate the intent of the parties. See *Gonsalves v. DaSilva*, 76 R.I. 474, 477, 72 A.2d 227, 229 (1950).

In this case, the reference in the deed to the cottage is a separate reservation by the grantor of the right to use the cottage until April 1, 1911. There is no suggestion anywhere in the language creating the easement that the Moduc Club's use of the right-of-way or the easement was restricted only to the single cottage. Accordingly, we are satisfied that the easement created in 1911 was an unrestricted grant of access to the property, and that the trial justice was correct in declaring the additional intensity to be an increase in degree and not in kind. Therefore, we conclude that the trial justice properly declined to order the extinguishment of the right-of-way, and consequently, Burke–Tarr's appeal is denied and dismissed.

### Establishment of an Easement by Prescription

We next address Ferland's attempt to obtain a declaration of a prescriptive easement over the right-of-way. In defense of the prescriptive easement argument, Burke–Tarr contended before the trial justice that G.L. 1956 § 34–7–5 prevented the establishment of an easement in this case. Section 34–7–5 provides:

> "No enjoyment by any persons, companies or corporations, for any length of time, of the privilege of maintaining telegraph, telephone, electric, or other posts, wires or apparatus in, upon or over any lands or buildings of other persons or corporations, shall thereby confer any right to the continued enjoyment of the easement or raise any presumption of a grant thereof."

Moreover, Burke–Tarr argued that it was immune from a declaration that Ferland had acquired a prescriptive easement in this case because the instant water line was the type of utility or apparatus contemplated by § 34–7–5. The trial justice, however, never reached this issue because he determined that Ferland had failed to demonstrate by clear and convincing evidence the requisite elements to establish an easement by prescription.

At the outset, we note that § 34–7–5 is of no assistance to Burke–Tarr since the language of that statute is conspicuously devoid of any reference to subterranean water lines, and hence bears little resemblance to the utilities that are mentioned. Furthermore, after reviewing the record and the applicable law, we are led to the conclusion that the trial justice erred when he found that Ferland failed to establish a prescriptive easement for the water line.

The right to the flowage of water and the disposal of waste underneath the lands of another can be acquired by an express grant, by implication from the severance of heritage ownership, *see Wiesel v. Smira,* 49 R.I. 246, 253, 142 A. 148, 151 (1928), or by a prescriptive easement through actual use in conjunction with other essential factors. *See Greenwood v. Rahill,* 122 R.I. 759, 412 A.2d 228, 230 (1980). "One who claims an easement by prescription must establish open, adverse and continuous use under a claim of right by strict proof, that is, by clear and satisfactory evidence." *Id.* (quoting *Jerry Brown Farm Ass'n v. Kenyon,* 119 R.I. 43, 51, 375 A.2d 964, 968 (1977)).

In rejecting Ferland's claim of an easement by prescription, the trial justice found that "neither the time requirements for a successful easement by prescription [had] been met," nor had Ferland established by clear and convincing evidence that the use of the land was open, notorious, and hostile. In arriving at this conclusion, the trial justice noted that Burke–Tarr's owner, Bessie Nickerson (Nickerson), knew that the water line was being installed and acquiesced to its location through the existence of the lease. We conclude that this finding is incorrect, however, because the lease did not provide for the installation of subterranean drains or pipes, and an inference of permissive use, which would defeat the element of hostile use, cannot properly be drawn from the lone fact that the parties entered into a written lease for the seven and one-half foot strip of land. Furthermore, Nickerson's testimony that she was aware that a water line was being installed is not sufficient to establish that the water line was installed with her express or implied permission. Therefore, the conclusion of the trial justice that the water line was installed initially with Nickerson's permission, and only became hostile

after the expiration of the lease, is not supported by the evidence and is therefore clearly wrong.

■ We are also satisfied that the circumstances of this case support the finding by clear and convincing evidence that the location and the use of the water line occurred for the requisite statutory period, and thus evinces an easement by prescription. "This [C]ourt has stated repeatedly that one who claims an easement by prescription has the burden of establishing actual, open, notorious, hostile, and continuous use under a claim of right for ten years as required by *** § 34–7–1." *Palisades Sales Corp. v. Walsh,* 459 A.2d 933, 936 (R.I.1983). Furthermore, although each element must be established by clear and convincing evidence, *id.,* "[n]o particular act to establish an intention to claim ownership is required. It is sufficient if one goes upon the land openly and uses it adversely to the true owner, the owner being chargeable with knowledge of what is done openly on his land." *Greenwood,* 412 A.2d at 230.

■ The evidence in this case demonstrates that the period for a prescriptive easement, as set forth in § 34–7–1, had expired prior to the termination of the lease, and well before Burke–Tarr filed notice of its intent to dispute adverse possession pursuant to § 34–7–6. Moreover, we have found no evidence that Burke–Tarr objected to Ferland's installation of the water line, or its continuous use, at any point prior to the expiration of the lease. To support this conclusion, we note Nickerson's testimony that she did not know that the water line was partially located outside the seventeen and one-half foot right-of-way until the commencement of this suit. Therefore, we conclude that there is no suggestion that this pipe, although installed in full view of Nickerson, was done so with her permission.

■ Finally, the fact that the state of Rhode Island attempted to take this property through eminent domain in 1984 has no bearing on the establishment of a prescriptive easement since the ten-year statutory period had expired previously and Ferland already had acquired a prescriptive easement for the water line. Since both the state's aborted attempt at eminent domain, and Burke–Tarr's filing of notice pursuant to § 34–7–6, occurred after the requisite statutory period, neither could divest Ferland of its prescriptive easement "since such an easement conveys a good and rightful title forever." *Greenwood,* 412 A.2d at 230. Consequently, we conclude that the trial justice erred in denying Ferland's claim for a prescriptive easement.

### Monetary Damages

■ Lastly, we consider the trial justice's award in favor of Burke–Tarr for $66,706.24, plus interest and costs, comprised by the following amounts: $16,552.99 for the fair rental value of the seven and one-half foot by 218 foot strip of real estate; $11,586.75 for the fair rental value of the realty for the installation of the water line; and $38,566.50 for "the adverse effect on the remainder of Burke–Tarr's fee estate as a result of the installation and use of the waterline which resulted in more noise and congestion." In light of our conclusion that Ferland acquired a prescriptive easement for the water line, we vacate the $11,586.75 awarded for the fair rental value of the realty for the water line.

■ Next, we address the fair rental value of the seven and one-half foot strip remaining after the expiration of the lease. This poses a more difficult question because we are unable to discern any finding by the trial justice that Ferland continued to use the strip after the judgment for possession in the termination and ejectment action. Indeed, the evidence conclusively establishes that on December 17, 1986, after trial in the District Court, Burke–Tarr was awarded possession of the strip and monetary damages. Upon the dismissal of Ferland's appeal to the Superior Court, judgment for possession became final and Ferland was ejected from the strip. Furthermore, at oral argument, it was learned that posts were placed on the seven and one-half foot boundary to prevent vehicular traffic, although it was suggested that pedestrian use of the strip may have continued. Therefore, because we are unable to discern any significant post-ejectment activi-

ty by Ferland, we vacate the $16,552.99 awarded for the fair rental value of the strip.

■ The final category of damages concerns the adverse effect, if any, upon the remainder of Burke–Tarr's fee estate. After correctly declining to order the extinguishment of the easement, the trial justice declared the increased use of the right-of-way to be merely in degree and not in kind. Consequently, with regard to this final category, the trial justice found Ferland to be liable for a portion of the fair market value of "Burke–Tarr's land and building as of 1989." We conclude that this measure of liability, however, was incorrect and that the appropriate measure for the increased intensity of the right-of-way should be that of severance damages, that is, the value of the servient estate, as diminished, if at all, by the additional burden of any increase in vehicular traffic.

We note the trial justice determined that this final category of damages represented "the adverse effect on the remainder of Burke–Tarr's fee estate as a result of the installation and use of the waterline which resulted in more noise and congestion." As we stated, *supra*, however, Burke–Tarr is not entitled to any damages, including severance damages, that arose from the installation of the water line. Nevertheless, Burke–Tarr is clearly entitled to severance damages that arose from an increase in noise and traffic congestion, which may have affected the value of the servient estate adversely. Therefore, we remand this case to the Superior Court for a determination of the amount of damages, if any, that actually were sustained by Burke–Tarr.

Because we are remanding this case for a determination of damages, we shall also briefly address the appropriate method of valuing the property encumbered by the expanded easement. Burke–Tarr argues that the trial justice should consider an enhancement valuation method, which is based upon the value of Ferland's property as enhanced by the right-of-way and the water line, as compared with the value of Ferland's property without these enhancements. Furthermore, Burke–Tarr contends that the subject property (the right-of-way) is so unique that

there are no comparable sales by which to assess a fair market value and that Ferland's property is worth significantly less without the right-of-way and the water line. Burke–Tarr's assertion that the value of Ferland's property is relevant to this determination, however, is clearly wrong. Consequently, we conclude that the trial justice correctly focused on the value of Burke–Tarr's property.

■ The trial justice properly rejected the enhanced valuation method in favor of the preferred method of ascertaining the fair market value of land, the comparable-sales method. *See Capital Properties, Inc. v. State*, 636 A.2d 319, 321 (R.I.1994); *Warwick Musical Theatre, Inc. v. State*, 525 A.2d 905, 910 (R.I.1987). "[U]nless the *** land has a special function *** its valuation by other than the comparable-sales method is not warranted ." *Capital Properties, Inc.*, 636 A.2d at 322–23.

■ Here, the trial justice correctly found that the property in question was not so unique and special to warrant a departure from this preferred method of valuation. However, he incorrectly determined that his task was to place a value on the right-of-way. Because the appropriate measure of damages, if any, is a diminution to the value of the remainder of the servient estate, and since the servient estate in this case is of ordinary commercial use, the comparable-sales approach is the appropriate method of valuation. Therefore, on remand, the comparable-sales method should be utilized.

For the foregoing reasons, Burke–Tarr's appeal concerning the trial justice's refusal to extinguish the easement is denied and dismissed. Ferland's appeal concerning its acquisition of a prescriptive easement and the calculation of monetary damages is sustained. The judgment of the trial justice is affirmed in part and vacated in part, and the papers in this case are remanded to the Superior Court for further proceedings that are consistent with this opinion.

Chief Justice WEISBERGER did not participate.