DECISION
This matter is before the Court on plaintiffs prayer for preliminary injunctive relief so as to preclude defendants from entering onto certain real estate, hereinafter the "disputed area," and further to preclude defendants from interfering with or removing certain "no trespassing signs" posted by plaintiffs on and about the disputed area. For the purposes of this decision, the disputed area is defined as that certain real estate situated in the Town of Foster, County of Providence on the northerly side of Central Pike described generally as follows:
 "Bounded westerly by the center of Hemlock Brook; bounded northerly along a line from the northerly part of a former beaver pond as shown on the survey hereinafter referred to running to an old tree with wire located in the center of said Hemlock Brook; bounded easterly in a line from said tree to and running with an old stone wall to the northerly side of Central Pike and bounding southerly by said Central Pike all as shown on a `Map of Land on Central Pike in the Town of Foster, Rhode Island prepared for Silvio Virginia Sella surveyed by Coventry Survey Co., Inc. August 18, 1992, scale 1 inch equals 100 feet (plaintiffs' exhibit 1).'"
More with respect to this survey or map, infra.
There is no question but that defendants own, as shown on said map, and occupy Lot 52 to the east of the former beaver pond and own and occupy Lot 52 north of the disputed area, having acquired their real estate in 1979. (See defendants exhibit P, pp. 22-24).
There is no question but that plaintiffs acquired their real estate in February 1997 from Silvio and Virginia Sella (on whose behalf the aforementioned map had been prepared). Plaintiffs took title through two deeds; a warranty deed extending from Hemlock Brook westerly to land of Helen S. Vidler and Ruth Schennum (shown on the map) and parties, together with plaintiffs' predecessor in title, the Sellas, to a property line agreement set forth on said map setting the western boundary line of plaintiffs' property; and the other a bargain and sale deed extending easterly from said brook to the stone wall and tree with a wire hereinbefore referred to as the easterly property line of plaintiffs' property. The Court finds that the last mentioned bargain and sale deed more likely than not was used to convey the portion therein described because upon the recording of the map by the sellers in 1993, defendants caused to be served and recorded in the Foster land records a notice of intent to dispute pursuant to the provisions of General Laws 34-7-6
(plaintiffs' exhibit 4 is a copy of the notice of intent to dispute).
Further evidence before the Court tends to establish that defendants have from time to time utilized the disputed area or portions thereof. The evidence tends to establish that defendants planted trees, authorized and conducted logging operations and thereafter stumped the area from the brook easterly. In addition, the evidence tends to establish use of the brook itself by the defendants, together with maintenance by them of a foot path along the brook in the disputed area and the creation of a tractor path through said area. Evidence also disclosed that Mr. Walden uses part of the disputed area for target practice.
Conspicuously absent, (but not necessarily dispositive) at this stage of the proceeding, is any testimony or other evidence of what, if any, use of the disputed area has been made by plaintiffs other than to post the aforementioned no trespassing signs along what they deemed to be their side of the stone wall which they claim as the easterly boundary of their property.
The Court notes that many of the activities on the disputed area by defendants long predate plaintiffs' acquisition of their property in 1997. Such other facts as may be significant to the Court's decision herein will be set forth as appropriate in the following discussion.
Plaintiffs here seek preliminary injunctive relief; to wit, a preliminary injunction precluding the defendants from entering on to the disputed area and/or from removing or altering said area in any way pending a trial on the merits. Our Supreme Court inFund for Community Progress v. United Way, 695 A.2d 517 at 521 (R.I. 1997) clearly articulated that a request for such relief is addressed to the sound discretion of the trial justice and indicated that in the exercise of that discretion a number of factors should be considered. These factors are a showing by the moving party of:
(1) a reasonable likelihood of success on the merits; and
(2) some irreparable harm that is presently threatened or imminent and for which there exists no legal remedy to restore the moving party to their rightful position.
Our court further indicated that if the moving party satisfies those two criteria, then the court should weigh the "equities," so called, taking into account the public interest if one exists. Only if the result of that process justifies the issuance of such relief may the court then exercise its sound discretion and so order a preliminary injunction. The inquiry here then must start with the question as to whether plaintiffs have demonstrated a reasonable likelihood of success on the merits. Our Supreme Court in its aforementioned opinion made it clear that a substantial likelihood of success was not equated with "a certainty of success." Indeed, the court said ". we require only that the moving party make a prima facie case."
Plaintiffs on this issue have produced evidence to satisfy their burden of demonstrating a reasonable likelihood of success, to wit, a prima facie case of establishing record title to the disputed area. The testimony of Mr. Suorsa, a registered professional land surveyor, coupled with plaintiffs' exhibit 1, the map dated August 12, 1992, is enough to make out a prima facie case that the boundary line is the old stone wall and a line extending from that wall in a generally northerly direction to the old tree with wire shown thereon. Other evidence calling this into question as hereinafter discussed is not sufficient to preclude it from being a prima facie showing. It is, of course, axiomatic that our law treats real estate as unique and an infringement on real estate rights as irreparable for which no legal remedy exists (except perhaps in the case of takings under eminent domain powers and related matters). Because of its uniqueness, clearly when balancing the equities ordinarily in a case of this nature, the scales would tilt in favor of the record owner of the real estate in question. Our statutes do, however, under certain circumstances provide a mechanism for defeasment of the record title holder or, more appropriately, for the establishment of seisin and possession by one who establishes what generally is referred to as adverse possession. Under Title 34, Chapter 7, Section 1 of the Rhode Island General Laws, if a claimant has been, for the space of ten years, in the uninterrupted quiet, peaceful and actual seisin and possession of real estate claiming the same as his, then and if all of such elements be proven by strict proof, that is to say, by a preponderance of the clear and convincing evidence, then defendants are deemed to have established a good and rightful title in themselves. Palisades Sales Corp. v. Walsh, 459 A.2d 933
(R.I. 1983). Here defendants assert such a claim and predicate their right to go upon the disputed area on their allegations that they have essentially, since they acquired their undisputed real estate, utilized the disputed area openly, notoriously in the same manner as would the average owner considering its geophysical nature. The resolution of their claim, of course, must await the final trial on the merits of this matter.
This Court, in consideration of the evidence before it with respect to the adverse possession claim of defendants and in light of its view of the evidence adduced by plaintiffs through the surveyor and clearly the gaps therein contained with respect to the differentiation in acreage between the title deeds and the results of the survey (done for the purpose of setting the western boundary line of plaintiffs' predecessor in title), coupled with the substantial doubts raised in the Court's mind as to the issue of whether the "old stone wall" in fact constitutes a boundary marker in view of the title documents introduced by plaintiffs as exhibit P, is at this juncture going to decline to exercise its discretion and is going to decline to issue preliminary injunctive relief.
Above, this Court indicated that our case law authorizes a trial justice to issue preliminary injunctive relief in the exercise of his or her reasonable judgment if certain prerequisites are found to exist. Here, the Court arguably has found the existence of evidence with respect to the prerequisites. However, the Court is going to decline, as indicated above, to exercise its discretion because of what might well be a valid claim of adverse possession and because there is substantial evidence before the Court tending to detract from the prima facie case made out by plaintiffs as aforesaid.
Accordingly, counsel for the defendants shall present an appropriate order denying the prayed for preliminary relief.