DECISION
This matter came before the Court on a jury-waived trial for determination of whether an easement by prescription exists on a small parcel of land adjacent to a driveway. Mr. and Mrs. King allege that they continually use this small parcel in order to turn their cars in and out of Post Road in Warwick.
 Findings of Fact
In 1976, Andrew J. King purchased a home at 1003 Post Road in Warwick, Rhode Island. The property has a short driveway leading to Post Road. Post Road is a heavily traveled, two lane secondary road at that location. Rather than backing onto Post Road, Mr. King regularly would back his car up approximately twelve feet short of Post Road, onto a small area of his neighbor's property ("the disputed area") and pull out (now forward facing) onto the main street. He regularly performed this maneuver since he occupied the property. Mrs. Deborah King was added to the property at a later date. She lived at 1003 Post Road since 1980 and performed the same maneuver of backing her car onto a neighbor's property to access the street.
The neighbor's property is currently owned by defendant, Broken Properties, LLC, and has a street address of 1009 Post Road, Warwick, Rhode Island. In October *Page 2 
2005, Steven Mills, one of the principles of Broken Properties, placed railroad ties on the corner of this property, preventing the Kings from using it for their turning maneuver.
The Broken Properties lot had been through a variety of owners during the years. Broken Properties purchased the parcel at a foreclosure in August of 1993. Mr. Mills asserts that the property was significantly improved during 1993 and 1994. Prior to Broken Properties receiving ownership of the parcel, 1009 Post Road had a large curved driveway. As Mr. King's brother previously owned the property, and a portion of the fence had been removed, this driveway was sometimes used to access the plaintiffs' property. By 1993, this practice ended as Mr. Mills regularly parked cars in the driveway to access his building.
Mr. and Mrs. King became friendly with the principles of Broken Properties. They would watch over each other's property, discuss local affairs, and even perform special services for each other from time-to-time. During the next 10 years, Mr. and Mrs. King never disclosed that they had an interest in the small easement, though they regularly used it. They signed certain affidavits for the refinance of their home, met with appraisers, and filed federal court papers, none of which disclosed their interest in the disputed parcel. Mr. King believed that his interest in the property was minor and not yet complete.
In 2001, Broken Properties decided to place a new fence along the border with the Kings' property. After a stockade fence was constructed behind the buildings, Mr. King discussed the fence with Mr. Mills. Mr. Mills agreed to change the fence in the front of the property to a more aesthetic fence, and to end the fence eight feet before the sidewalk. *Page 3 
Mr. King obviously wanted the fence to end before the disputed parcel so he could turn his car around, though the turn around area was not discussed. Mr. Mills did not give consent to Mr. King's practice of using the disputed parcel.
Several more years went by and the relationship between the neighbors soured. Mr. Mills received some complaints from local building authorities and suspected that his neighbors were to blame. In October of 2005, he blocked the disputed parcel preventing the King's from using the area as a turn-a-round. He first placed eight-foot-long timbers to block the area and then added two large boulders.
It is important to note that there was minimal discussion between the neighbors concerning the use of the disputed parcel. Mr. and Mrs. King never sought permission from Broken Properties or either of its principles to use the area as a turn-around, nor did Broken Properties (or any other owner) give permission. Obviously, the principles of Broken Properties knew the practice of Mr. and Mrs. King in using the parcel as they would turn around right at the front of the properties, tire tracks would be left in the snow, and it was agreed to end the fence some eight feet prior to the sidewalk. Mr. Mills testified that all of the parties regularly used the disputed parcel as a turn-around. "That's what we did. They did, we did."
 Analysis and Conclusions of Law
Fortunately, the Rhode Island Supreme Court recently reviewed the parameters of easements by prescription.
 In Rhode Island, the one who claims an easement by prescription bears the burden of establishing actual, open, notorious, hostile, and continuous use under claim of right for at least ten years. The determination of whether or not the claimant has satisfied the burden of proving each of these elements by clear and satisfactory evidence involves *Page 4 
the exercise of the fact-finding power. Indeed, factual determinations are generally necessary to determine whether claimants have established the elements of prescriptive easements.
 Nardone v. Ritacco, 2007 R.I. Lexis 118, 8-9 (R.I. 2007), citations omitted.
In the case at bar, it is undiputed that the use of the parcel by the Kings was actual, open, notorious and continuous during more than ten years. Mr. and Mrs. King established that their use was the regular egress for motor vehicles, their use was known to the owners of the burdened property, obvious for all to see, and in clear view of the public. Broken Properties never contested whether or not the Kings used the disputed parcel, but they did question whether or not the Kings use was hostile. Although there was another access to the King property during one point in time, Broken Properties failed to establish that the entry at the top of the driveway was ever used as a regular access to the Kings' home. Mr. and Mrs. King have met their burden by proving by clear and convincing evidence that they continuously, notoriously and openly used the parcel in dispute for the period of at least 1976 to 2005.
The remaining issue in dispute is whether or not Mr. and Mrs. King's use of the easement was truly hostile or adverse. The burden of proving that the ownership was adverse is upon the party claiming the interest.See Stone v. Green Hill Civic Association, Inc., 786 A.2d 387, 389 (R.I. 2001). In Reitsma v. Pascoag Reservoir Dam L.L.C., 774 A.2d 826
(2001), the State claimed it acquired an easement by prescription (and adverse possession rights) over a state-constructed boat ramp accessing a small, private lake. The type of hostility required was discussed at length:
 No particular act to establish an intention to claim ownership is required. It is sufficient if one goes upon the *Page 5 
land openly and uses it adversely to the true owner, the owner being chargeable with knowledge of what is done openly on his land. . . .
 Indeed, adverseness and hostility have been inferred from the mere use of another's property without that owner's communicated permission to do so. Reitsma at 831.
Coming to this conclusion, the Court cited two earlier cases. InBurke-Tarr Co. v. Ferland, 724 A.2d 1014 at 1019 (R.I. 1999) the Court held "an inference of permissive use, which would defeat the element of hostile use, cannot properly be drawn from the lone fact that the parties entered into a written lease for a portion of the area." InTalbot v. Town of Little Compton, 52 R.I. 280, 286, 160 A. 466, 469
(1922) the Court had stated the use was "so regular for such a long amount of time that any person having a claim of title, if he gave any attention whatever to the matter, would have known the use was hostile and under a claim of right."
In each of these cases and in the case at bar, the title owner ignored the obvious. The owner knew, or should have known, that a portion of their property was being used regularly and openly. In each of these cases, and clearly in the case at bar, no permission of any kind was given, nor was it requested.
Mr. and Mrs. King openly entered and used the disputed parcel in a manner adverse to Broken Properties. Broken Properties knew that the Kings regularly entered and used its properties. Broken Properties did nothing to stop this use, nor did it ever give permission for this use. Mr. and Mrs. King have sufficiently established that their use of the disputed land was hostile and adverse by clear and convincing evidence. *Page 6 
 Conclusion
The Plaintiffs have established the existence of a prescriptive easement. Judgment will enter for the plaintiffs on Count One of their Complaint. Judgment shall enter for the Plaintiffs on the counterclaim.
Counsel for Mr. and Mrs. King shall submit a judgment suitable for recording. *Page 1