DECISION
In this action, Plaintiff, Rhode Island Mobile Sportsfishermen, Inc. ("RIMS") seeks access over the Defendant's property to a vacant parcel of land. In its second amended complaint, RIMS claims a permanent right of access and a prescriptive easement. RIMS claims it and its predecessors in title have crossed over the Defendant's beachfront for decades. This action was tried before the Court, jury waived.
 Findings of Fact
The Quonochontaug Beach is a two-mile long barrier beach extending along the coasts of Westerly and Charlestown. It fronts on the Atlantic Ocean to its south. To the north of the beach peninsula is the Quonochontaug Pond. The only land access to the easternmost tip of the peninsula is along a sand trail running the entire length of the beach. As its name implies, the trail is not improved. The trail has existed for decades and has shifted somewhat through the years, particularly where it is exposed to the ocean.
Almost the entire peninsula, and all the ocean frontage, is owned by the Nope's Island Conservation Association, Inc. ("Nope's"). The easternmost mile of the sand trail has limited vegetation and is completely on property owned by Nope's. At the easternmost point of the peninsula, three parcels lie along Quonochontaug Pond: At the *Page 2 
end of the peninsula is a lot owned by RIMS. To its west is property owned by Marshall Anderson, containing the only structure on the peninsula. Lot 82 is to the west of the Anderson property.
On April 13, 1999, RIMS acquired Lot 82 or "the Crandall Lot" from John Crandall, who received it from his mother's estate. The deed describes the property but does not describe access to the property. The deed is "subject to covenants, easements, restrictions and other matters of record if any, to the extent the same are in force and effect." The Crandall Lot is on the north side of the peninsula. It is undeveloped[1] and the northern portion of the lot is marshy.
A creek, approximately 40 feet in length, separated the Crandall Lot from the remainder of the peninsula since the 1930s. The creek was shallow and of different depths through the years. Because the beach area and the creek change constantly in the tidal environment, the creek is now silted to become dry, but it washes out during substantial coastal storms. The creek has filled in significantly over the last 20 years.
The Crandall Lot was purchased by the Crandall family in 1929, though the original and successive deeds for the parcel do not describe a right to access the parcel, or the metes and bounds description.[2] The Crandall Lot is not adjacent to the sand trail. At its closest point, the parcel is separated from the trail by the creek and about 15 feet of Nope's property. The more commonly used access point to the Crandall Lot travels about 40 feet over Nope's property to the sand trail. The use of the Crandall Lot has been limited through the decades. The Crandall family used the lot for quahogging, bathing, *Page 3 
duck hunting and trapping. Until the 1980s the Crandalls accessed the lot less than ten times per year. In the 1980s Stephen Crandall shellfished and hunted regularly on the lot. At one time he installed a duck blind on the parcel. Through the 1990s, the Crandalls again used the property less frequently, though a yearly clambake was held on the site. The Crandall family was never told that they could not drive to their property from the sand trail. They did so, openly, for over 70 years.
The Crandalls drove onto the property occasionally, depending on the condition of the creek, and routinely used the sand trail to access the area. Usually, the Crandalls' use of the property was not noticeable, given the tranquility of the area through most of the year. There were some exceptions, such as a yearly clambake, held in the summer.
RIMS promotes access to the shoreline for fishing and bathing, and allows the general public to use its property. When the lot was conveyed to RIMS in 1999, RIMS intended and commenced a more intensive use of the Crandall Lot. Members of RIMS regularly drove vehicles from the sand trail over the Nope's Island land and onto the Crandall Lot, particularly during the summer months. Nope's immediately objected, recorded a notice of intent to dispute adverse possession in July 2000, and commenced the instant litigation. Undaunted, RIMS continued to use the Crandall Lot and drive vehicles onto it.
Nope's is dedicated to conserving the barrier beach. Working with the Quonochontaug Conservation Commission, Nope's posts regulations and guidelines for the use of the property near the access area to the trail. Vehicle use and parking is limited to the sand trail itself. Permanent signs were placed along the trail describing the limited *Page 4 
use, but the signs promptly disappeared. Nope's allows the barrier beach to be used by the public. Nope's allows foot traffic over its dunes.
 Presentation of Witness Testimony
James Milardo, the president of RIMS, was the first witness. The Court found his testimony consistent and credible but the Court questions his knowledge of the historical use of the Crandall Lot. Clearly, he was committed to the success of RIMS in the instant litigation.
John Crandall, born in 1928, described his family's use of the property through the decades. The Court found his testimony highly credible, consistent and responsive. Although advanced in age, he was thoughtful, earnest and helpful to the Court. His son Stephen Crandall, age 42, also described his family's use of the lot, but his testimony was dedicated to the RIMS case. He was clear and well-spoken but evasive and vague in his answers concerning when the creek was a wash, how often he used the property and who had been to the Crandall Lot. He was inconsistent concerning when he used a vehicle on the Crandall Lot, and when he could access the Crandall Lot by vehicle, but the remainder of his testimony was fairly credible.
Donald Jackson surveyed the property for RIMS. He described his survey and the difficulty in completing it. It was challenging to ascertain what facts were derived from title records, from the site, from his survey revisions, or from prior surveyors. The Court had no reason to question his credibility given that his survey was consistent with the survey completed for Nope's. *Page 5 
Henry Heminway, a past officer of Nope's, was highly credible and helpful. He described the changing appearance of the Crandall Lot and his knowledge of the use. As both a member of Nope's and a fisherman, he was uncomfortable with having to choose sides but recognized his obligation to reveal what he observed. He was consistent and thoughtful in his testimony and therefore very credible.
Nathan Lauder testified concerning his survey of the property for Nope's. Mr. Lauder was also credible and explained his survey in detail. The Court was again left to question what information was received from what sources.
Richard Hosp also testified for Nope's as an officer and a board member for many years. Mr. Hosp owns a home across the pond (north of the parcel), so the Crandall Lot is visible from his property. Mr. Hosp was precise, thoughtful and consistent in his answers, though committed to the Nope's case. Mr. Hosp was helpful, but the Court questions the extent of his knowledge concerning the historical use of the property.
Donald Wakeman was an officer of Nope's who dealt directly with the controversy concerning RIMS. He described the use of the parcels, the alleged harm to the beach and the desire of several local organizations to conserve the beach. While the Court found him fairly credible, he was very prepared and became hostile on cross-examination, anxious only to assert his own legal theory of the case.
Barbara Engel also testified. As an officer for Nope's, she decided how signs were posted and described the environmental impact. She was highly credible and thoughtful and her testimony was never significantly disputed. *Page 6 
 Issue Presented
The second amended complaint of September 2010 is concise. It does not list separate counts but describes the term "prescriptive easement" in paragraph 15. Nope's therefore refutes that RIMS has either obtained adverse possession over its property or a prescriptive easement. In RIMS's post-trial memorandum, it narrows its claims significantly. RIMS claims only an easement by prescription.
The memorandum submitted by Nope's limits the issue further. Nope's has no objection to pedestrian access or access by boat to the Crandall Lot; however, Nope's objects to vehicular access over its property to the Crandall Lot because Nope's is fearful that the vehicle may cause damage to the fragile barrier beach.[3] Therefore, the only issue is whether RIMS may access its lot freely by vehicle. As indicated, this would require vehicles to leave the sand trail and to travel 10 to 40 feet over Nope's other land to access the Crandall Lot.
By allowing the use of pedestrian traffic but restricting the use of vehicular traffic, Nope's is parsing terms. Neither the case law nor the statute (R.I.G.L. § 34-7-1 regarding adverse possession) appears to distinguish between different modes of use of the easement by prescription. Travel in the modern world obviously changes with time. While motorized vehicles were rare in the 1800s, travel by horse is rare today. Logically these societal advancements, if accepted rationally and applied to a parcel of land reasonably, would not create an easement by prescription, or leave it to wither away.[4] *Page 7 
 Easement by Prescription
"One who claims an easement by prescription bears the burden of establishing actual, open, notorious, hostile, and continuous use under a claim of right for at least 10 years. Hilley v.Lawrence, 972 A.2d 643 (R.I. 2009); Stone v. Green IslandCivic Association, Inc., 786 A.2d 387, 389 (R.I. 2001). These elements must be established "by clear and satisfactory evidence."Id. at 389-390.
In Stone v. Green Island, a property owner sought a declaratory judgment that a beach association had no right to access Ms. Stone's beachfront. Although the case was returned to the trial court for further proceedings, the high court indicated "parties seeking to establish an easement by prescription must show some affirmative act that puts the property owner on notice that their occupancy was hostile to the owner and that they were claiming the property as their own."Stone,. at 389 (citation omitted). Later in the case, the high court was more specific:
 It is sufficient if one goes upon the land openly and uses it adversely to the true owner, the owner being chargeable with knowledge of what is done openly on his land. Stone, p. 391 quoting Greenwood v. Rahill, 122 R.I. 759, 763, 412 A.2d 228, 230 (R.I. 1980).
In this action, the Crandall family accessed their property, by foot and vehicle, by leaving the sand trail and walking over the Nope's beachfront for many decades. This use was actual, open, and continuous.
Although Rhode Island case law is teeming with decisions holding that permissive use does not ripen into a prescriptive easement, mere silence in the face of use inconsistent with the owner's property right does not constitute a permissive use. See *Page 8 Reitsma v. Pascoag Reservoir Dam, LLC,774 A.2d 826, 832 (R.I. 2001). Mr. Crandall's testimony reveals a belief that his family had every right to use the property:
 Q: Did you ever ask permission of anyone to park off the Sand Trail to access the marsh?
 A: No, of course not. Of course not. We didn't even know — we didn't know who owned the land or much care, you know. You wouldn't even see anybody unless it was just one of the people that lived over there or the Coast Guard guys or whatever. You didn't see it much.
 Q: But if they had, people could see you, couldn't they?
 A: I suppose they could.
 Q: From a long way away? Out there there's no trees?
 A: No, it's flat.
 * * *
 Q: Mr. Crandall, did you believe you had a right to get on to that lot 82, the marsh lot, the way you did?
 A: Yes.
 Q: No one ever told you you couldn't get there that way?
 A: No, nobody ever said anything to me.
 Trial transcript, pp. 70-71.
Accordingly, the Crandall family used the access area under a claim of right for over ten years.
The requirement of hostility does not require hostility in the emotional sense, but rather an action inconsistent with the claims of others. Taffinder v. Thomas, 119 R.I. 545, 552 (R.I. 1977). As to use and hostility, there must be evidence of use of the land in a more significant fashion than simply walking across it.Anthony v Searle, 681 A.2d 892, at 897 (R.I. 1996). Of course, this area is beachfront. While Nope's sought exclusive, limited use of their property, there can be no doubt that the Crandalls' use was both notorious, open, and hostile to the interests of the owners. The Crandalls drove trucks and other vehicles to their lot and parked them along the sand trail. They swam openly on both sides of the peninsula. They hunted, fished, clammed and even *Page 9 
constructed a duck blind which was on the lot for several years. They were not told to limit their vehicular use, or any other use during these decades. Further
 [t]he seasonal use of this rural path does not impair [RIMS]'s claim because it is well settled that even in adverse-possession cases where stricter standards are applied, it is only necessary to show that the claimant has acted toward the land in question as would an average owner, taking property into account the geophysical nature of the land . . . consistent with that use to which others might put it. Palisades Sales Corporation v Walsh, 459 A.2d 933, 936-7 (R.I. 1983), (emphasis added, citations and quotations deleted).
With regard to each of the elements referenced above, the Court finds that they have been proven clearly, convincingly and with satisfactory evidence.
 Statutory Modification
R.I.G.L. § 34-7-9 states: "Any land held or preserved by a nonprofit corporation or nonprofit association for purposes or conservation or open space is not subject to adverse possession or prescription." This statute was enacted by P.L. 2008, chapters 63 and 67. Accordingly, it did not take effect until after 2007. By then, the Crandalls had already acquired their rights in the easement. Those rights vested immediately upon the expiration of the statutory period. Carnevale v. Dupee,783 A.2d 404, 412 (R.I. 2001); Burke-Tarr Co. v. FerlandCorp., 724 A.2d 1014, 1020 (R.I. 1999). Hence, the statute does not diminish any rights already vested in the owners of the Crandall lot.
 Reasonable Limitations
As both properties are completely undeveloped, the location of the path from the sand trail to the RIMS lot is not clear. Indeed, the sand trail itself moves with the evolution of the beach. Nope's is concerned about the damage to its barrier beach. As *Page 10 
the evidence demonstrated, the beach is continually shifting, vegetation is limited and RIMS seeks to use a trail only to access their property. Nope's produced no scientific evidence to demonstrate significant environmental harm, while RIMS established a prescriptive easement.
Nevertheless, the significance of this conflict is not lost. Nope's has every right to preserve and retain its property rights to the extent allowed by law. A very recent Rhode Island Supreme Court case excellently articulates the severe implications of adverse possession.
 In reality, adverse possession is nothing more than a person taking someone else's private property for his own private use. It is hard to imagine a notion more in contravention of the ideals set forth in the U.S. Constitution protecting life, liberty and property." Cahill v. Morrow, January 20, 2011, page 5. (citations and quotations omitted)
The court continues by warning against the "black-hearted trespasser with the invade and conquer mentality",Cahill at p. 15, but in the context of the case at bar, it is troubling to determine which party is depriving the other of its property. Almost all of the beneficial use of the RIMS's property would be lost. Ferrying members by boat or walking two miles is not only a major inconvenience to RIMS, it is strikingly different from what the owners of the Crandall lot have done for almost a century.
While Nope's property rights are paramount, so too are the rights of the owners of the Crandall lot. Without vehicular access and faced with the inability to park vehicles at or on the sand trail, RIMS is significantly impaired from using its own property. However, use of the Nope's land by RIMS should be limited by the geophysical nature of the land referenced in Gammons v. Caswell,447 A.2d 361, 368 (R.I. 1982). Where an *Page 11 
easement does exist, therefore, a Court should not only define it but limit it to its history and reasonable future use.[5]
 Conclusion
Seeking to guard against the overuse of another's property rights as described in Cahill, and cognizant of the limited use of the rural area, the Court limits and defines the easement area with specificity. Accordingly, the easement established is to extend from the Sand Trail to the RIMS lot. It shall be for foot traffic and vehicular traffic. It shall be wide enough for one vehicle to pass at a time. As Nope's seeks to preserve certain property, the easement shall not necessarily be at the shortest distance, but on a location to be designated by Nope's, in writing, within forty (40) days of the date of this Decision. The location of the easement designated by Nope's shall be reasonable and appropriate, according to the features of the properties, to allow for the permitted passage. The number of vehicles allowed to cross over the easement shall not be limited. RIMS shall repair any damage it has caused to the easement area and return it to its natural state within thirty (30) days of any demand by Nope's. Nope's may change the location of the easement once every calendar year by sending RIMS notice of the new location at least thirty (30) days prior to the implementation of the change.
Judgment shall enter for the plaintiff to the extent described herein. Plaintiff shall prepare a judgment, suitable for recording, within twenty (20) days of the date of this Decision.
[1] There appears to be only one house on the two mile peninsula. The house is the Anderson property, next to the Crandall Lot.
[2] The 1929 deed to the Crandalls simply describes the parcel as "marshland."
[3] Nope's post-trial memorandum at 15.
[4] Nope's allows traffic by foot, but does not allow parking on the sand trail. By this suit, they seek to limit the use of a vehicle off of the sand trail. Hence, the only alternatives to owners of the Crandall Lot would be to walk the two mile stretch of beach, travel some distance by boat, or be driven by someone else to their land.
[5] In Reitsma, at page 839, Justice Goldberg notes in her dissenting opinion that the Court is obligated to "create the least burdensome easement possible." *Page 1