MORRIS WIESEL *et ux vs.* LOUIS SMIRA *et al.*

MAY 14, 1928.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

BARROWS, J. In 1892 in Providence a public sewer ran through Elmwood avenue and another one was laid through Adelaide avenue. At the southeast corner of Adelaide and Elmwood avenues a parcel of land was owned by one person. On the land were four houses. In 1893 the owner of said houses secured permission of the city and laid a sewer drain entirely on his own property, said drain starting at the rear of the most easterly house on Adelaide avenue and connecting with the Elmwood avenue sewer. The pipe was buried in the ground at the rear and outside of both houses on Adelaide avenue and passed about two feet outside of the house on the corner lot. Joining this pipe the owner laid two others leading from the house on Elmwood avenue. Through these passed 'the drainage from the latter house. From the laying of the pipes until the present time the drainage through them has been uninterrupted and continuous and they have furnished the only means through which the sewage from the several houses was carried to the public sewer.

In 1912 the common ownership was severed, respondent Coppen purchasing the most easterly house on Adelaide avenue. In 1913 one Lee bought from the former owner of the common tract the house on Elmwood avenue and this came by mesne conveyances to Smira in 1922. In 1927

complainants purchased from the original owner the corner house. Subsequent thereto respondent Blackinton purchased from the original owner the house between that of Coppen and Wiesel. The deeds to the several grantees were in the usual warranty form and referred to appurtenances. In none of them was there mention of the drain and there is no evidence that any of the four present owners actually knew of its existence prior to 1927.

Wiesel recently tore down the corner house in preparation for the erection of a brick building which he was about to place upon the lot. In a preparatory study of the drainage problem Wiesel's plumber discovered at the city engineer's office in the City Hall the layout of the system carrying the sewage from the several houses, and digging on the Wiesel lot disclosed the pipe. Thereupon Wiesel brought the present bill to restrain the several respondents from continued trespass in the use of the drain pipe. Wiesel's claim was that the drain was neither apparent nor necessary and that respondents had no easement entitling them to make use of it.

The Superior Court granted the injunction against Blackinton and refused an injunction against Coppen and Smira and entered a decree dismissing the bill as to them. The reason for such distinction was that the alleged easement of Blackinton would be created by implied reservation and that of Coppen and Smira by implied grant. Blackinton took no appeal from the decree. Wiesel is before us claiming to be aggrieved by the dismissal of his bill against Coppen and Smira.

The questions presented are whether an easement to Coppen and Smira was implied and, if so, whether it was destroyed by a subsequent conveyance of the servient tenement to Wiesel.

So long as the houses were possessed by a common owner of course no easement existed. *Denton* v. *Leddell*, 23 N. J. Eq. 64; *Robinson* v. *Hillman*, 36 App. Cas. D. C. 241. Upon severance of common ownership an easement could

have been created by implication. If so created it would arise from the pre-existing condition often referred to as a "quasi easement." Tiffany, Real Property, Vol. 2, p. 1270, § 363. *O'Rorke* v. *Smith*, 11 R. I. 259 (way); 19 C. J. 914. We have recognized the possibility of such an easement. *Evans* v. *Dana*, 7 R. I. 306 (way) said it rested on the presumed intent of the parties. *Providence Tool Co.* v. *Corliss Steam Eng. Co.*, 9 R. I. 564, at 571 (way), said it must be adapted to and intended for the use of the estate to which it is annexed. The rule also applies to artificial arrangements which openly exist at the time of the sale and materially affect the value of the estate granted. *Paine* v. *Chandler*, 134 N. Y. 385 (water pipe).

Although in many cases, particularly the early ones, the distinction was not made between an implied reservation and an implied grant of such an easement, authorities now generally recognize it. *Paine* v. *Chandler, supra;* 19 C. J. 920. The question is ably discussed and the cases exhaustively reviewed by Pitney, V. C. in *Toothe* v. *Bryce*, 50 N. J. Eq. 589. Briefly the distinction is based upon the theory that the common owner's deed of a portion of his land conveys all essential rights which he has and that whatever is apparent and continuously necessary to the beneficial use and enjoyment of the granted property is intended to be conveyed so far as the grantor could do so. *McElroy* v. *McLeay*, 71 Vt. 396. From this it is clear that where the owner creates a severance by sale of the servient portion of his premises no implication of intention to reserve any rights to himself as owner of the quasi dominant estate ought to be made unless such rights are absolutely necessary to the use of the property reserved. 1 Thompson on Real Prop. § 369, pp. 476, 477; 19 C. J. 922.

In the United States there is some difference of opinion whether conveyance of the quasi dominant tenement "with appurtenances" in itself creates an easement. In England a conveyance with "rights used and enjoyed therewith" does so. 2 Tiffany, p. 1291, n. 42 cites the cases. It is not

denied that this drain was appurtenant and essential to the use of the houses as sold to Coppen and Smira. It is also not denied that the pipe itself in passing through Wiesel's land could not be seen without digging up the land.

A quasi easement arises out of circumstances from which the court finds an indication of the probable intention of the parties. Tiffany asserts, p. 1273, that the question of whether an easement is created by an implied grant is one of construction of the deed and that, as an aid to construction, courts have said that when certain characteristics, such as continuity, apparency, and necessity, exist a grant will be implied. The author adds, "It does not seem that the presence or absence of any or all of these characteristics should be conclusive." This court said in *O'Rorke* v. *Smith, supra*, that, upon the severance of a heritage, a grant may be implied of all those continuous and apparent easements which had been in fact used by the owner during the unity though they had no legal existence as easements. Like most American courts and contrary to the English cases, we also added the element of necessity as a characteristic. Tiffany, p. 1284, n. 15; *Hess* v. *Kenney & Morris*, 69 N. J. Eq. 138. The degree of the necessity has been variously stated, 19 C. J. 919. In Tiffany, p. 1286, n. 24, Maine, Massachusetts, New Hampshire and Virginia are cited as holding that no necessity can exist and consequently no easement be implied where a substitute can be procured without unreasonable trouble or expense. This rule has a practical value. In the present case there is no evidence whatever upon this phase of the situation although it is assumed that connection could readily be made directly to Adelaide avenue by Coppen and to Elmwood avenue by Smira. In the *Evans* case we adopted the view followed in most states, that the test of necessity is whether the easement is reasonably necessary for the convenient and confortable enjoyment of the property as it existed when the severance was made. 19 C. J. 919, n. 70. When this property was sold fully equipped with visible plumbing and appliances to

carry off waste and water, there can be no serious dispute that the use of the drain pipe was reasonably necessary for respondents' convenient and comfortable enjoyment of the property. Being appurtenant, if existent the easement passed from Lee to Smira without specific mention. *Sullivan Granite Co.* v. *Vuono*, 137 Atl. 687, 48 R. I. 292. The pipe had been used for twenty years prior to 1912. It can not seriously be doubted that the owner intended that the purchasers continue to so use it. It has been continuously so used for fifteen years prior to this suit and even now its adequacy for the demands made upon it is not denied. We think such burden of showing necessity as rested upon respondents was maintained. If the present question had arisen between the respondents and the original grantor who built the drain there would be little difficulty in finding the elements of continuity, apparency and necessity.

In no prior case has this court dealt with a so-called continuous easement. A drain furnishes a typical example of such an one. It is admitted that the easement here claimed possessed the characteristic of continuity.

Can it properly be characterized as apparent? The pipe across complainants' land was hidden. For this reason it was asserted that it was not apparent and therefore no easement could be implied. Tiffany, p. 1281, n. 5, discusses how the term "apparent" came into use. Plainly this pipe was not visible though the appliances connecting with and leading to it were obvious. .Disappearance of waste from Coppen's and Smira's houses was plain. Apparent in such cases is not synonymous with visibility to anyone. Thompson on Real Prop. Vol. 1, § 368. It may mean little more than continuous. In *Fetters* v. *Humphreys*, 18 N. J. Eq. 260, an apparent or continuous easement is said to be one depending on an artificial structure such as a pipe for conveying water and a nonapparent or noncontinuous easement is one such as has no means specially appropriated to its enjoyment and which is enjoyed at intervals such as a right of way. The court says, at page 266: "A continuous or apparent easement is either a fixture or enjoyed by means

of a fixture upon the land itself." In *Larsen* v. *Peterson*, 53 N. J. Eq. 88, the court, again speaking through Pitney, V. C., says: "It seems to me that the controlling question is, whether the arrangement for the supply of water to complainants' house constituted what is known to jurists as a 'continuous and apparent' easement, which was 'necessary' in the sense in which that word is used in that connection, for the comfortable use and occupation of the complainant's premises.

"As to the quality of its being 'apparent,' the fact that it was, in part, hidden in the earth and so not physically apparent to the eye, is not conclusive. The part on complainant's land—the pump—was visible, and the water must have come either from the land actually conveyed to him or from that conveyed to Peterson . . .

"It seems to be well settled that the mere fact that a drain or aqueduct, as the case may be, is concealed from casual vision, does not prevent it from being '*apparent*' in the sense in which that word is used in that connection," citing cases.

Tiffany, p. 1278, says that an easement is apparent if its existence is indicated by signs which might be seen or known on a careful inspection by a person ordinarily conversant with the subject. See *Lampman* v. *Milks*, 21 N. Y. 505; *Ingals* v. *Plamondon*, 75 Ill. 118; *Rubio* v. *Everett*, 154 Calif. 29.

From the evidence in this case, while neither complainants nor respondents are shown to have given any consideration to the matter, it appears that a person ordinarily conversant with drains, to wit, complainants' plumber, readily discovered the existence of the present one. We think that this drain was apparent to Coppen and Lee within the legal meaning of the term as established by the authorities. Whatever the original grantor owned his warranty deed conveyed. A case closely resembling the present one, and holding that an easement was impliedly granted, was *Stuyvesant* v. *Early*, 58 App. Div. 242 (covered drain pipe). We recognize that *Dolliff* v. *Boston & Maine R. R.*, 68 Me. 173

(drain carrying off overflow from a spring) was a claim of easement by implied grant where the court took a view contrary to the *Stuyvesant* case. The court there acted upon the presumption that the grantor did not intend to pass an easement. Such presumption here seems contrary to his intention as shown by his acts. When respondents bought their houses the original owner plainly intended that they should make use of the existing connections with the public sewer without any express representation in the deed. It was immaterial to the grantees how their sewer connection was made. Grantor knew how it was made and if he did not wish the system then in vogue to be continued it was incumbent upon him to say so. As stated by Story, J., in *U. S.* v. *Appleton*, 1 Sumner 492, 502, quoted in *McElroy* v. *McLeay*, 71 Vt. 396, at p. 399: "Every grant of a thing naturally and necessarily imports a grant of it as it actually exists unless the contrary is provided for and whatever are properly incidents and appurtenances of the thing granted will pass by mere operation of the law without the word appurtenances." Respondents had a right to rely on the obvious fact that their houses were connected with a sewer system. We can not agree with *Robinson* v. *Hillman*, D. C. 36 App. Ct. 241, in its holding that the right to maintain a concealed pipe can pass as an easement only by express grant. We hold that respondents by implied grant had the easement to have their sewage run through this pipe when the common owner split up the land retaining the portion thereof through which the pipe passed. No record of this easement was required and it is not clear what, if any notice of it, could be recorded. G. L. 1923, Ch. 297, Sec. 6. Respondents were in no way remiss in failing to have the easement recorded.

Complainants, however, urge that, even if an easement existed by implied grant, a conveyance by the former common owner of the servient tenement retained by him destroyed the easement and we are referred to Ruling Case Law, Easements, § 61; 19 C. J. 940. It is true that the *bona fide* purchaser of land without actual or constructive

notice of existence of an easement may take the land relieved of its burden. When this occurs it is because the dominant tenant has failed to do something which he ought to have done. In the case at bar to whom could the dominant tenant give notice and when? Notice to the grantor was unnecessary because he himself laid the pipe. It can scarcely be contended that Coppen was under a duty to know when the original owner was negotiating for or making a sale of the servient tenement nor had he a duty to follow up mesne conveyances with notices of the easement to the purchasers. Smira's situation was similar. Both Coppen and Smira had a legally established interest in the land which could not be taken away without their knowledge or some failure of duty on their part. No cases support complainant's contention in this respect. Those cited by him relate either to unrecorded grants where record was required, parol licenses or cases where the easement was held not to be apparent. Once conceding the existence of an easement by severance of the quasi dominant and quasi servient tenements, we see no way by which the owner of the latter can convey it even to an innocent purchaser freed from said easement without the knowledge or approval of the owner of the dominant tenement. Rights in real property can not be thus divested. Admittedly there is a hardship upon complainants in a case like the present one but by reason thereof the court is not warranted in destroying respondents' settled property rights and saying to them that they can secure as good results by a different use of their property which they are under no obligation to make. So to do would be an arbitrary exercise of power which is not warranted however desirable and simple the making of new connections may be.

The complainants' appeal is dismissed, the decree appealed from is affirmed and the cause is remanded to the Superior Court for further proceedings.

*Comstock & Canning, Andrew P. Quinn,* for complainants.
*McGovern & Slattery; Charles B. Coppen,* for respondents.