DECISION
This matter came before the Court for a jury-waived trial held June 28 and June 29, 2010. The issues before the Court concern a paved road (hereinafter, the "Claimed ROW") that exists on the Defendants' property as a common element. Plaintiffs assert that they own an easement by express grant and reservation across the Claimed ROW. In the alternative, Plaintiffs assert that they are entitled to an implied easement and/or a prescriptive easement. Defendants have counterclaimed for trespass. Jurisdiction is pursuant to G.L. 1956 § 9-30-1 et. seq.
 I Rule 52 Standard
Rule 52(a) of the Rhode Island Superior Court Rules of Civil Procedure provides that "in all actions tried upon the facts without a jury . . . the court shall find the facts specifically and state separately its conclusions of law thereon. . . ." As a non-jury trial, resolution of the instant dispute requires the trial justice to sit "as trier of fact as well as law," to weigh and consider the *Page 2 
evidence, to determine the credibility of witnesses, and to draw inferences from the evidence presented. Hood v. Hawkins,478 A.2d 181, 184 (R.I. 1984). See also Rodriques v.Santos, 466 A.2d 306, 312 (R.I. 1983) (holding that the question of who is to be believed is one for the trier of fact). Rule 52(a) does not necessitate "extensive analysis and discussion of all the evidence"; rather, "brief findings and conclusions are sufficient if they address and resolve the controlling and essential factual issues in the case." Donnelly v. Cowsill,716 A.2d 742, 747 (R.I. 1998) (quoting Anderson v. Town of E.Greenwich, 460 A.2d 420, 423 (R.I. 1983)).
 II Findings of Fact
In considering all of the testimony and other evidence presented, the Court finds as follows:
 1. Plaintiff Wellington Condominium Association (hereinafter, the "WCA") is an unincorporated association. It is the master association of a condominium known as Wellington Yacht Racquet Club on Newport Harbor — a Condominium (hereinafter, the "First Condominium").
 2. Plaintiff WCA is a master association with three sub-associations. The first sub-association is the Wellington Hotel Owners Association (hereinafter, the "WHA"), which is comprised of unit owners and/or time share owners of Hotel Units H-3, H-4, and H-5. The second sub-association is the Wellington Business Association, which is comprised of owners of business units. The third sub-association is the Wellington Residential Association, comprised of one condominium unit.
 3. Wellington Business Association and its members are not parties to this litigation.
 4. Plaintiff John Rizzo (hereinafter, "Rizzo") is a member of WHA and has been since he acquired his first WHA timeshare interval in September 1997. *Page 3 
 5. Plaintiff Arthur Leonard (hereinafter, "Leonard") is a member of WHA and has been since he acquired his first WHA timeshare interval in July 2003.
 6. Plaintiff Frederick Howayeck (hereinafter, "Howayeck") is a member of WHA and has been since he acquired his first WHA timeshare unit in 1985 (hereinafter, Plaintiffs John Rizzo, Arthur Leonard, and Frederick Howayeck will be referred to collectively as the "Individual Plaintiffs").
 7. The Individual Plaintiffs own time share intervals in the First Condominium, and are members of Plaintiff WHA.
 8. Defendant Wellington Cove Condominium Association (hereinafter, "Wellington Cove") is an unincorporated master association affiliated with a condominium located in Newport, Rhode Island located on Kirwin's Fifth Ward Lane (hereinafter, the "Second Condominium"). The Second Condominium has a common boundary with the First Condominium.
 9. The Second Condominium has two residential sub-associations: Defendant Wellington On The Harbor Condominium Owners' Association, Inc. and Defendant Harrington Court Condominium Owners' Association.
 10. Defendant Wellington On The Harbor Condominium Owners' Association, Inc. ("Wellington Harbor") is a non-profit corporation affiliated with a condominium development located in Newport, Rhode Island (hereinafter, the "Third Condominium").
 11. Defendant Harrington Court Condominium Owners' Association (hereinafter, "Harrington Court") is an unincorporated association. *Page 4 
 12. Defendant Wellington Marina, LLC is a Rhode Island limited liability company. It is a member of Defendant Wellington Cove. Wellington Marina LLC owns land unit 3 within the Second Condominium.
 13. In or around January 30, 1986, a joint venture by the name of Wellington Hotel Associates owned a certain parcel of real estate in Newport, Rhode Island (hereinafter, the "Full Property").
 14. On or around January 30, 1986, Wellington Hotel Associates, as the Declarant, filed a Declaration of Condominium (hereinafter, the "First Declaration") in the Newport Land Evidence Records in Condominium Book 56 at Page 44. The First Declaration established WCA as the Master Association of the First Condominium.
 15. Section 1.1 of the First Declaration submitted the Full Property to the provisions of the Rhode Island Condominium Act, creating the First Condominium in the Full Property.
 16. The First Declaration provided that the Full Property could be developed in phases and that portions of the Full Property could be withdrawn from the First Condominium. Exhibit D to the First Declaration identifies a portion of the Full Property as the "Withdrawable Real Estate."
 17. A plat plan entitled "Wellington Yacht Racquet Club on Newport Harbor — a Condominium, Survey Plat," dated August 13, 1992, recorded in the Newport Land Evidence Records, shows the various phases of the Full Property. Phase IV is a parcel of land that comprised the northerly end of the First Condominium premises and is bounded by Narragansett Bay on the west, Coddington Landing on the north, Kirwins Fifth Ward Lane and another portion of the First Condominium on the east (upon which is located *Page 5 
Plaintiffs' tennis courts) and another portion of the First Condominium on the south. (See Defs.' Ex. D.)
 18. Phase VI is labeled as the site for a marina.
 19. In 1989, Wellington Hotel Associates assigned the right to develop and withdraw Phases IV and VI to Newport Partners. (See Defs.' Exs. B, C E; Pls.' Exs. 4 8.)
 20. On or around August 12, 1992, Newport Partners (the successor to the original Declarant Wellington Hotel Associates with respect to Phases IV and VI) filed in the Newport Land Evidence Records Book 556 at Page 432, the Third Amendment to the First Declaration (hereinafter, the "Third Amendment"). Pursuant to the Third Amendment, Newport Partners, under the authority of Section 14.2 of the First Declaration, withdrew Phases IV and VI from the Condominium (hereinafter, the "Withdrawn Parcel" or "Defendants' Premises"). The remaining phases of the Full Property and First Condominium constitute the property owned by the Plaintiffs (hereinafter, "Plaintiffs' Premises").
 21. This withdrawal made the Defendants' Premises a separate parcel of real estate that was no longer part of the common elements of the First Condominium. The Third Amendment did not by its express terms create or reserve any easements between or over the Plaintiffs' Premises or Defendants' Premises nor reserve or grant to the Plaintiffs or its members any right to use the proposed marina of Phase VI.
 22. By a deed with quitclaim covenants dated March 13, 1997 (hereinafter, the "First Deed"), Newport Partners conveyed the Withdrawn Parcel to Newport Partners LLC. Newport Partners LLC was one of the general partners of Newport Partners.
 23. By a Declaration of Condominium dated October 16, 1997 (hereinafter, the "Second Declaration") and a plat plan dated October 14, 1997 entitled "Land Unit Plan, The *Page 6 
Wellington Cove Condominium" (hereinafter, the "Second Condominium Plat Plan"), Newport Partners LLC created the Second Condominium out of the Withdrawn Parcel. The Second Condominium has three land units.
 24. By a deed with quitclaim covenants dated October 16, 1997 (hereinafter, the "Second Deed"), Newport Partners LLC granted Unit 1 in the Second Condominium to Pulte Home Corporation.
 25. By a Declaration of Condominium dated June 9, 1998 (hereinafter, the "Third Declaration"), Pulte Home Corporation submitted Unit 1 of the Second Condominium to the provisions of the Rhode Island Condominium Act to create the Third Condominium. The Third condominium includes a building with six residential units.
 26. By a deed dated August 12, 1998, Newport Partners LLC conveyed land units 2 and 3 of the Second Condominium to Goodwin Family Associates.
 27. By a deed dated May 9, 1999, Goodwin Family Associates conveyed land unit 2 of the Second Condominium to Waterside Development Corporation, which created the Harrington Court Condominium (hereinafter, the "Fourth Condominium") out of said land unit. The Fourth Condominium includes a building with two residential units.
 28. By a deed dated August 10, 2005, Goodwin Family Associates conveyed land unit 3 of the Second Condominium to Wellington Marina LLC, which constructed a marina out of said land unit.
 29. Within the Plaintiffs' Premises, there are asphalt areas intended for vehicular traffic. These areas include a north/south axis that runs from Wellington Avenue to Harrington Street. *Page 7 
 30. After 1989, Plaintiffs placed a chain across the opening onto Harrington Street; and, at the same time, Plaintiffs installed speed bumps on this north/south axis. In 2008, Plaintiffs replaced the chain with a gate that from time to time is locked and prevents access to and from said north/south paved axis and Harrington Street.
 31. The traveled asphalt area also extends from the north/south axis to the common boundary of Plaintiffs' Premises and Defendants' Premises. Plaintiffs claim that this vehicular way also extends across the Defendants' Premises to Kirwins Fifth Ward Lane. Plaintiffs claim an easement — the Claimed ROW — across that portion of the asphalt within the Defendants' Premises.
 32. The Claimed ROW had a gravel surface from the 1980s until circa 1999-2000 when it was paved by the developers of the Third and Fourth Condominiums. A photograph dating from the late 1980s shows the gravel surface running along the easterly side of the Withdrawn Parcel.
 33. After the asphalt was laid down in 1999-2000, the Claimed ROW included a portion of the asphalted area that lies between the easterly edge of the buildings on land units 1 and 2 and the easterly boundary of the Withdrawn Parcel.
 34. In the summer of 2005, one or more of the Defendants placed a chain between two poles on weights at the southerly end of the Claimed ROW near the common boundary of the Plaintiffs' Premises and Defendants' Premises, impeding access to it by vehicle and by foot.
 35. In the summer of 2006, one or more of the Defendants replaced the poles and chain with heavy plastic barriers which blocked vehicular traffic, and impeded pedestrian traffic. *Page 8 
 36. Heather Campbell, on behalf of Plaintiffs WCA and WHA, communicated with Defendants asserting the right of Plaintiffs' members to use the Claimed ROW; however, Defendants refused to remove the barriers.
 37. The Defendants have a sign that states that the parking spaces are reserved.
 38. The Plaintiffs assert that Sections 14.2 and 6.1(n) of the First Declaration either create or resulted in the creation of an express easement over the Defendants' Premises at the time of its withdrawal from the Full Property.
 39. Section 14.2 provides that "the Declarant will provide reasonable rights of way over and across the real estate withdrawn necessary to provide adequate access to any amenity located in, by, along or adjacent to Narragansett Bay."
 40. When the Defendants' Premises was withdrawn, the Plaintiffs had no right to use any amenity in, by, along or adjacent to Narragansett Bay located within the Defendants' Premises. Therefore, there was no need for a right of way to access any such amenity.
 41. Section 6.1 (n) provides:
 "Declarant for itself and its successors and assigns, reserves an easement, on, over and under those portions of the Common Elements, whether in Phase 1 or any subsequent phases to go upon any portion of the Common Elements for the purpose of ingress and egress to the Withdrawable Real Estate and for the purpose of servicing the Withdrawable Real Estate with appropriate utilities and services. . . ."
 The term "Common Elements" in Section 6.1(n) refers to the Common Elements within the First Condominium and not to any Withdrawn Parcel once it was withdrawn, because once the withdrawal occurred, the Withdrawn Parcel would cease to be a Common Element. *Page 9 
 42. This so-called "utility easement" could not create a right to cross over the Defendants' Premises to access Kirwins Fifth Ward Lane, as Kirwins Fifth Ward Lane is not mentioned in Section 6.1(n). Rather, this utility easement provides only that the Declarant reserves the right to use the Plaintiffs' Premises, i.e., the Common Elements of the First Condominium, to access, and provide utilities to, any portion of the condominium that is withdrawn. The reason for reserving this easement was to allow the Declarant or its assigns, as the owner of such withdrawn parcel, the right to use the First Condominium's Common Elements during the development of the withdrawn parcel or to install or extend existing utilities in the First Condominium Common Elements for the use of the withdrawn parcel. Consequently, this utility easement is expressly not for the benefit of the Plaintiffs Premises, but rather is a burden on the Plaintiffs Premises.
 43. Based on an aerial photo that the parties stipulated was taken in the late 1980s (the "1980s Photo") (Pls.' Ex. 2) and testimony of Heather Campbell, prior to 1999-2000 the Claimed ROW had dirt and gravel surfaces that could be driven over. One gravel way generally ran northerly along the easterly side of the Defendants' Premises between Plaintiffs' Premises and Kirwins Fifth Ward Lane. Another gravel surface ran westerly to a small dock in the approximate location of the current marina owned by Defendants' members. These gravel surfaces were of a temporary nature and their widths and exact locations are unknown.
 44. The 1980s Photo and the testimony of Heather Campbell and Messrs. Hovey and Howayeck confirm that there was limited vehicular use of this graveled surface prior to 1999, primarily to provide an ingress and egress for Plaintiffs' Premises to and from Kirwins Fifth Ward Lane. There is no evidence as to who used the Claimed ROW *Page 10 
between 1992 (when the Defendants' Premises was withdrawn) and 1999 (when the Claimed ROW was paved) other than Frederick Howayeck, John Rizzo and Heather Campbell. Campbell was living at Coddington Landing located to the north of Defendants' Premises until 1992 and then in Providence. Rizzo testified that starting in 1997 he and his family sometimes used the Claimed ROW to access the tennis courts as he had the right to use the tennis courts during any time of the year. Howayeck testified that his use was sporadic and made at different times during different years in relation to his ten separately deeded weeks. Further, while Mr. Leonard testified about his use since 2003, no evidence was presented concerning his predecessor-in-interest's use of the Claimed ROW. Their testimony was self-serving, insufficient to show continuous use of the Claimed ROW, and ultimately, not credible to the Court.
 45. The use of the Claimed ROW by Plaintiffs since 1992 (when the Defendants' Premises was withdrawn) was permissive.
 46. The Plaintiffs do not need to use the Claimed ROW to access their tennis courts and Kirwins Fifth Ward Lane. The Plaintiffs' tennis courts are located on the northerly side of Plaintiffs Premises and approximately 2 feet from the easterly boundary of the Defendants' Premises. This approximately two-foot strip is adequate to access the gates on the westerly side of Plaintiffs' tennis courts.
 47. Harrington Street abuts the northerly side of the Plaintiffs' Premises. A curb cut/driveway located east of the tennis courts allows direct access from the Plaintiffs' Premises to Harrington Street and Kirwin's Fifth Ward Lane. (Pls.' Ex. 3; Defs.' Ex. D.) The only reason that the Plaintiffs' members have not been able to use this access is because the Plaintiffs have maintained a chain or gate across this entryway exit for *Page 11 
many years, even after the Claimed ROW was blocked in 2006. After 1989, Plaintiffs placed a chain across the opening onto Harrington Street. In 2008, Plaintiffs replaced the chain with a gate that from time to time is locked and prevents access to and from said north/south paved axis and Harrington Street.
 III Conclusions of Law
A. Standing
As previously noted in this Court's summary judgment bench decision, the Plaintiff Associations have standing to bring this action on behalf of their members.See § 34-36.1-3.02(a)(4) (a condominium association is authorized to "[i]nstitute, defend, or intervene in litigation or administrative proceedings in its own name on behalf of itself or two (2) or more unit owners on matters affecting the condominium").
B. Burden of Proof
In Rhode Island, "[t]he party claiming the benefit of an easement must demonstrate its existence by clear and convincing evidence."Mattos v. Seaton, 839 A.2d 553, 557 (R.I. 2004) (citingBerberian v. Dowd,104 R.I. 585, 589-90, 247 A.2d 508, 510-11 (1968)); see also
25 Am. Jur. 2d Easements and Licenses § 116. The Rhode Island Supreme Court has explained that "[b]ecause of our concern that a person's title to real estate should remain free and unfettered, we have held an individual who seeks to establish an easement upon the land of another to a high degree of proof." Berberian,104 R.I. at 589, 247 A.2d at 510-11.
C. Express Easement
Plaintiffs claim that the Claimed ROW is an express easement appurtenant. An easement appurtenant is "[a]n easement created to benefit another tract of land, the use of [the] easement being incident to the ownership of that other tract." Costa v.Silva, 996 A.2d 607, 609 n. 2 (R.I. 2010) *Page 12 
(quoting Black's Law Dictionary 586 (9th ed. 2009)). When considering instruments that purportedly create an easement, it is this Court's "duty . . . to effectuate the intent of the parties."Hilley v. Lawrence, 972 A.2d 643, 649 (R.I. 2009) (quotingCarpenter v. Hanslin, 900 A.2d 1136, 1147 (R.I. 2006)). Where a written instrument is ambiguous, as will often be the case when the writing is not an integrated agreement, the Court may consider evidence which completes or clarifies a written instrument.See Supreme Woodworking Co. v. Zuckerberg,82 R.I. 247, 252, 107 A.2d 287, 290 (1954). A written instrument "is ambiguous only when it is reasonably and clearly susceptible to more than one interpretation." Paul v. Paul,986 A.2d 989, 993 (R.I. 2010).
Plaintiffs assert that a number of documents create an express easement to the Claimed ROW. Section 14.2 of the First Declaration provides that "the Declarant will provide reasonable rights of way over and across the real estate withdrawn necessary to provide adequate access to any amenity located in, by, along or adjacentto Narragansett Bay." (See Pls.' Ex. 1 § 14.2) (emphasis added). The Court has found as a fact that there is no amenity located in, by, along or adjacent to Narragansett Bay which Plaintiffs are entitled to access.See supra Part III ¶ 40. The Court further finds that the intent of the Declarant of including § 14.2 in the First Declaration was to provide access to the proposed marina of Phase VI. When the Defendants' Premises was withdrawn, the Third Amendment did not grant to the Plaintiffs or its members any right to use the proposed marina of Phase VI. Therefore, no right of way was necessary to access any such amenity; and thus, no right of way was created by § 14.2 of the First Declaration.
The Third Amendment to the First Declaration withdrew the Defendants' Premises from the First Condominium in 1992. (See Pls.' Ex. 5.) Plaintiffs assert that the Third Amendment should have provided for an easement onto or across the Defendants' Premises because the First *Page 13 
Declaration provided for the possibility of an easement if there were to be an amenity "located in, by, along or adjacent to
Narragansett Bay." (See Pls.' Ex. 1 § 14.2) (emphasis added). In addition, every transfer in Defendants' chain of title subsequent to 1992 expressly states that Defendants' Premises is subject to: "Rights, ifany, of others to pass and repass on, over, and across the common and limited common elements for ingress and egress to abutting land of [Plaintiffs'] condominium." (See Pls.' Ex. 7 Ex. E ¶ 3; Pls. Ex. 9 § 1.2(f)) (emphasis added). However, since the Third Amendment did not reserve or otherwise provide for any waterfront amenity for the benefit of the First Condominium, there was no need to create such an access easement when the Defendants' Premises was withdrawn. Thus, the Third Amendment, and all subsequent documents in Defendants' chain of title did not create a right of way for the benefit of the Plaintiffs.
Section 6.1(n) of the First Declaration provides for an easement for the purposes of "ingress and egress" to the Defendants' Premises and to provide utility services to the Defendants' Premises. (See Pls.' Ex. 1 § 6.1(n).) The Plaintiffs have failed to show this Court by clear and convincing evidence that this so-called easement created a right of way over Defendants' Premises in favor of Plaintiffs. Rather, the Court finds that this easement provides only that the Declarant reserved the right to use the Common Elements of the Plaintiffs' Premises to access and provide utilities to the Defendants' Premises. The Court finds that the Declarant's intent for reserving such an easement is that once a parcel is withdrawn, the Declarant or its assigns, as the owner of such withdrawn parcel, would have no rights to use the First Condominium during the development of the withdrawn parcel or to install or extend existing utilities in the First Condominium's Common Elements for the use of the withdrawn parcel. Consequently, § 6.1(n) did not create a right of way for Plaintiffs over Defendants' *Page 14 
Premises.
Thus, as a matter of law and fact, the Plaintiffs have failed to prove by clear and convincing evidence that they have an express easement for the Claimed ROW.
D. Implied Easement
"An implied easement is predicated upon the theory that when a person conveys property, he or she includes or intends to include in the conveyance whatever is necessary for the use and the enjoyment of the land retained." Hilley v. Lawrence,972 A.2d 643, 650 (R.I. 2009) (quoting Bovi v. Murray,601 A.2d 960, 962 (R.I. 1992)). Upon the severance of real estate once held in common ownership, "a grant will be implied of all those continuous and apparent easements which have in fact been used by the owner during the unity, though they have no legal existence as easements." Catalano v. Woodward,617 A.2d 1363, 1367 (R.I. 1992) (quoting Kenyon v. Nichols,1 R.I. 411, 417 (1851)).
The Rhode Island Supreme Court discussed the difference between an implied reservation of an easement and an implied grant of an easement in Wiesel v. Smira, 142 A. 148, 49 R.I. 246 (1928). The Wiesel court explained that "the distinction is based upon the theory that the common owner's deed of a portion of his land conveys all essential rights which he has, and that whatever is apparent and continuously necessary to the beneficial use and enjoyment of the granted property is intended to be conveyed so far as the grantor could do so. From this it is clear that where the owner creates a severance by sale of the servient portion of his premises[,] no implication of intention to reserve any rights to himself as owner of the quasi dominant estate ought to be made unless such rights are absolutely necessary to the use of the property reserved."Id. at 249, 142 A. at 149 (internal citations omitted) (emphasis added). Thus, when a common owner creates a severance of his own land and retains the dominant portion of the real estate, he *Page 15 
is presumed to reserve whatever rights he needs in the servient portion of the real estate. Likewise, an implied easement can only arise in such a situation if the rights in the servient estate are absolutely necessary to the dominant estate.
Here, the Declarant withdrew the Defendants' Premises (alleged servient estate) — i.e. severed it from the Full Property — in 1992 and did not reserve a right of way for the Plaintiffs' Premises (alleged dominant estate) via the Third Amendment. See discussion supra Part IV.C. The Declarant, as owner of the Full Property, severed the Full Property and failed to reserve a right of way over the Withdrawn Real Estate (Defendants' Premises) for the Plaintiffs' benefit to access the tennis courts and Kirwin's Fifth Ward Lane. Indeed, Plaintiffs can access both through Harrington Street. Consequently, the Claimed ROW is not "absolutely necessary" for Plaintiffs to access their tennis courts or Kirwin's Fifth Ward Lane. See Wiesel49 R.I. at 249, 142 A. at 149. As a result, Plaintiffs have failed to prove the existence of an implied easement by reservation by clear and convincing evidence.
E. Prescriptive Easement
The Rhode Island Supreme Court has held that to establish an easement by prescription, a claimant's possession must show "actual, open, notorious, hostile, and continuous use under a claim of right for at least ten years." Hilley, 972 A.2d at 651-52 (citingNardone v. Ritacco, 936 A.2d 200, 205 (R.I. 2007)). Each element must be proven by clear and convincing evidence.Id. An adverse claimant may tack on the period of possession of his predecessor from whom he derived title.See § 34-7-1; see also Carnevale v. Dupree,783 A.2d 404, 412 (R.I. 2001).
Here, the Plaintiffs use of the Claimed ROW began in 1992, after the Defendants' Premises was withdrawn from the Full Property. Individual Plaintiff Arthur Leonard acquired title in 2003 and individual Plaintiff John Rizzo acquired his title in 1997. Neither Leonard nor *Page 16 
Rizzo presented any documentation or testimony that there was any prior prescriptive use by previous owners. Therefore, their claims of prescriptive easement use must fail as a matter of law and fact because both have failed to establish prescriptive use of the Claimed ROW for at least ten years.
Individual Plaintiff Frederick Howayeck testified about his random, sporadic and summer use of the Claimed ROW from 1992 through 2006. While the Rhode Island Supreme Court has found that continuous seasonal hostile use can rise to the level of adverse possession, this case is distinguishable from those cited by Plaintiffs. See Allaire v. Fease,824 A.2d 454 (R.I. 2003); Palisades Sales Corp. v. Walsh,459 A.2d 933 (R.I. 1983). In both Allaire and PalisadesSales Corp., the hostile use of adverse claimants, while seasonal, was regular. See Allaire, 824 A.2d at 457-58;Palisades Sales Corp., 459 A.2d at 936-37. Here, Howayeck's use of the Claimed ROW was random and sporadic by his own admission. The Court finds that his adverse use of the Claimed ROW was not like that of an "average owner" because of his lack of consistent use during the summer season. See Palisades Sales Corp.,459 A.2d at 936-37. Therefore, Plaintiffs have failed to prove by clear and convincing evidence that Howayeck's use of the Claimed ROW was sufficiently continuous.
Likewise, with regard to when the Claimed ROW was gravel (1992-1998), there is no credible evidence of any alleged prescriptive use of it by any other member of the Plaintiff Associations. Heather Campbell testified that the Plaintiffs paid to "maintain" the Claimed ROW during this gravel period. However, the Court finds her testimony to be less than credible, especially since the gravel needed little to no maintenance. Thus, the only continuous adverse use of the Claimed ROW by Plaintiffs' members began in 1999, when it was paved. The period from 1999-2006 is not sufficiently enough to establish a prescriptive easement. As such, *Page 17 
Plaintiffs have failed to prove a prescriptive easement of the Claimed ROW by clear and convincing evidence.
F. Defendants' Counterclaim
Defendants also counterclaimed for trespass on the Claimed ROW seeking monetary and injunctive relief. However, Defendants have not pressed their claim during trial nor moved to sever the counterclaim from Plaintiffs' case. Consequently, Defendants have failed to prove their case of Plaintiffs' trespass by a preponderance of the evidence, especially with regard to the damages they claimed to have suffered and what injunctive relief is necessary.
 IV Conclusion
For the foregoing reasons, Plaintiffs' claims of an express easement, easement by implication, and prescriptive easement for their benefit on the Claimed ROW are denied. Additionally, Defendants' counterclaim for trespass is denied. The preliminary injunction issued by this Court on June 17, 2009 is dissolved.
Counsel shall prepare a judgment in accordance with this Decision.