**Affirmed and Memorandum Opinion filed November 26, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-18-00170-CV

**MTNV, INC., Appellant**

**V.**

**ALST REALTY, LLC & TUOI DO, Appellees**

**On Appeal from the 133rd District Court**
**Harris County, Texas**
**Trial Court Cause No. 2015-40735**

## MEMORANDUM OPINION

Appellant MTNV, Inc. ("MTNV") appeals the trial court's judgment in favor of appellees ALST Realty and Tuoi Do finding that a prior use easement, appurtenant of an underground sewer line, exists benefitting dominant property owned by ALST Realty across servient property owned by MTNV. We affirm.

# I.    Background

At issue in this appeal is ALST Realty's right to an implied easement for access to an underground sewer line, which runs across MTNV's tract of land.

ALST Realty is the owner of a .7781acre tract of real property located at 8502 C. E. King Parkway, Houston, Texas ("Dominant Property").  MTNV is the owner of an adjacent 3.1418 acre tract of real property located at 8514 C. E. King Parkway, Houston, Texas ("Servient Property").  Greenwood Utility District provides water and sewer services to the Servient Property.  The underground sewer line is connected to the Greenwood Utility Lift Station.  Prior to the parties' ownership, Ronald Tomlinson ("Tomlinson") owned and developed the Dominant Property, the Servient Property and the Lift Station Property for his own use as a commercial shopping center.  Unity of ownership by Tomlinson is undisputed.

*History of the dominant and subservient properties*

Tomlinson severed the unified tract into two properties on September 14, 1989, when he sold the Servient Property to Le Bich Hoang and Luong Hoang.

Tomlinson kept title to the Dominant Property until he sold it to Angie C. Autry on June 30, 1995.  On April 21, 1999, Autry sold the Dominant Property to Frank and Jewell Bush.  Thereafter, on January 11, 2005, the Bush's sold the property to third-party defendant/appellee Tuoi Do.[1] Greenwood Utility District agreed to operate the lift station to process the sewage from the Dominant Property in exchange for the electric bill being paid by Do when she owned the Dominant Property.  This was consistent with the arrangement between Greenwood Utility District and Frank Bush when he owned the Dominant Property.

---

[1] Susan Vu and Hanh Nguyen allegedly helped facilitate the sale of the Dominant Property to Tuoi Do.  Tuoi Do knew Susan Vu and Hanh Nguyen because they all attended the same church.

On March 27, 2008, Tomlinson sold the .0354 tract of land where the lift station is located to Greenwood Utility District. In or around February 2011, Do began paying Greenwood Utility District the equivalent of a sewer usage fee—*i.e.*, she paid a calculated amount that would be the equivalent of a tax rate as well as an estimated usage of the sewage. In exchange, Do stopped paying the electricity bills for the lift station.

MTNV, the operator of a commercial shopping center, purchased the Servient Property on December 6, 1999.[2] According to MTNV,[3] at the time of purchase, the use of the underground sewer line by the Dominant Property was not apparent, continuous, and/or necessary to the use of the Dominant Property because multiple septic tanks existed on the Dominant Property.

*2013 rupture of water line*

In 2013, there was a break in a water line allegedly on the Servient Property. At that time, Do owned the Dominant Property, which was managed by Sidney E. Webb, Jr. The break in the water line was believed to be caused by dry weather and lack of rain which caused the land to shift, resulting in a rupture in the water line. Do and MTNV disputed responsibility. According to MTNV, sewage and/or water intruded on to MTNV's property and resulted in a high water bill—totaling $7,278.22. Do denied any liability for the break in MTNV's water line.

MTNV hired and paid a licensed plumber, Roland Balderas II, who repaired the water leak. Balderas also reconnected the damaged sewer taps connecting the

---

[2] After Tomlinson sold the Servient Property to Hoang, the ownership history of the Servient Property reflects three additional owners prior to MTNV.

[3] The President of MTNV is Xuan Thi Vu also known as Susan Vu. Her husband is Hanh Nguyen. Nguyen performed maintenance on the Servient Property.

sewer lines on the Dominant Property to the sewer lines on the Servient Property. MTNV also paid the high water bill from Greenwood Utility District.

In January 2014, ALST Realty purchased the Dominant Property from Do in an "as is" condition. ALST Realty utilizes the Dominant Property as a mixed use property; it has commercial properties, residential duplexes, and mobile homes.

On July 15, 2015, ALST Realty filed suit seeking a temporary restraining order, declaratory judgment and temporary injunction against MTNV, based, in part, on the dispute between MTNV and Do over the 2013 damage to the broken water line and/or sewer line and MTNV's threat that MTNV would sever the sewer line unless ALST Realty paid the high water bill. ALST Realty sought declaratory relief from the court in the form of an easement by equitable estoppel or quasi-estoppel. On July 16, 2015, the trial court granted ALST Realty's application for TRO *ex parte* and set a hearing on the temporary injunction.

On July 27, 2015, MTNV filed its answer, counterclaims to ALST Realty's application for TRO and injunctive relief, and a cross-claim again Do. MTNV alleged Do trespassed on the Servient Property and illegally tapped into MTNV's sewer line. According to MTNV, while illegally tapping into its sewer line, Do broke MTNV's water line, resulting in monetary damages and ground contamination. Do, who appeared *pro se* in the trial court and on appeal, filed a response to the cross-claim, denying responsibility.

On June 14, 2017, the case was tried to the court in a bench trial. The trial court rendered judgment in favor of ALST Realty and, on December 6, 2017, issued Final Judgment. The trial court found that a prior use easement appurtenant of the underground sewer line exists benefitting the Dominant Property (ALST

Realty) across the Servient Property (MTNV).[4] The trial court granted ALST Realty a permanent injunction preventing MTNV from interfering with the easement rights belonging to ALST Realty. On January 22, 2018, the court entered Findings of Facts and Conclusions of Law. There were no requests to file additional findings of facts and conclusions of law. MTNV timely filed its notice of appeal.

## II. Analysis

On appeal, MTNV raises the following four issues: (1) whether the trial court erred in finding there was sufficient evidence of prior use easement appurtenant for a sewer line at the time the subject property was severed in 1989; (2) whether the trial court abused its discretion by failing to exclude testimony of Sydney Webb, Jr., who testified regarding Tomlinson's statements about development of the subject property, in violation of the hearsay rules and the Dead Man's Rule (Rule 801 and Rule 601 of the Texas Rules of Evidence); (3) whether the trial court abused its discretion in granting ALST Realty a permanent injunction in the absence of a pleading requesting such relief; and (4) in the alternative, whether the trial court erred as a matter of law in finding third-party defendant Do not liable to MTNV for the 2013 damages to the sewer line and/or water line.

## A. Sufficiency of the evidence

In its first issue, MTNV asserts that the evidence presented to the trial court was factually and legally insufficient to establish an easement at the time

---

[4] In rendering its verdict, the trial court observed that there was no pleading for a prior use easement. Rather, ALST Realty's pleadings were for easement by estoppel or quasi-estoppel. The trial court, however, found that prior use easement was tried by consent. MTNV does not dispute this determination.

Tomlinson severed the subject property, and the trial court erred as to its conclusion that there was an implied easement at the time of severance.

### 1. Standards of review

A trial court's findings of fact in a bench trial have the same force and dignity as the jury's verdict upon questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). When the trial court acts as a factfinder, its findings are reviewed under legal and factual sufficiency standards. *Id.* When specific findings of fact and conclusions of law are filed and a reporter's record is before the appellate court, the findings will be sustained if there is evidence to support them. We review the legal conclusions drawn from the facts found to determine their correctness. *TMC Worldwide, L.P. v. Gray*, 178 S.W.3d 29, 36 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

We review the trial court's conclusions of law *de novo*. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Conclusions of law are upheld if the judgment can be sustained on any legal theory the evidence supports. *Waggoner v. Morrow*, 932 S.W.2d 627, 631 (Tex. App.—Houston [14th Dist.] 1996, no writ).

When a party attacks the legal sufficiency of an adverse finding on which he did not have the burden of proof, he must demonstrate on appeal that no evidence supports the finding. *Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014) (per curiam). We review the evidence in the light most favorable to the appealed finding and indulge every reasonable inference that supports it. *City of Keller v. Wilson*, 168 S.W.3d 802, 821–22, 827 (Tex. 2005); *Graham Cent. Station*, 442 S.W.3d at 263. But the fact finder is the sole judge of the credibility of the witnesses and the weight to give their testimony, and it is the province of the fact finder to resolve conflicts in the evidence. *City of Keller*, 168 S.W.3d at 819–

If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then the fact finder must be allowed to do so, and we may not substitute our judgment for that of the fact finder. *Id*. at 822.

When a party attacks the factual sufficiency of the evidence pertaining to a finding on which the party did not have the burden of proof, we may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Bennett v. Comm'n for Lawyer Discipline*, 489 S.W.3d 58, 66 (Tex. App.—Houston [14th Dist.] 2016, no pet.). The amount of evidence necessary to affirm is far less than the amount necessary to reverse a judgment. *GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet*, 61 S.W.3d 599, 616 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

This court is not a factfinder. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998). Instead, the trier of fact—in this case the trial court—is the sole judge of witness credibility and the weight afforded their testimony. *GTE Mobilnet*, 61 S.W.3d at 615–16. Therefore, we may not pass upon the witnesses' credibility or substitute our judgment for that of the trial court, even if the evidence would also support a different result. *Id*. "If we determine that the evidence is factually insufficient, we must detail the evidence relevant to the issue and state in what regard the contrary evidence greatly outweighs the evidence in support of the challenged finding; we need not do so when we affirm." *Bennett*, 489 S.W.3d at 66.

### 2. Prior use easements

A party seeking to claim a prior use easement must prove: "(1) unity of ownership of the alleged dominant and servient estates prior to severance; (2) the use of the claimed easement was open and apparent at the time of severance; (3) the use was continuous, so the parties must have intended that its use pass by

grant; and (4) the use must be necessary to the use of the dominant estate." *Hamrick v. Ward*, 446 S.W.3d 377, 383 (Tex. 2014) (citing *Drye v. Eagle Rock Ranch*, 364 S.W.2d 196, 207–08 (Tex. 1962))

### 3. The evidence is sufficient to support the trial court's finding of an implied easement by prior use

MTNV argues the trial court committed reversible error in holding that there is an implied easement as a matter of law, citing paragraph 22 of the trial court's "findings of law." "MTNV contends that when Tomlinson severed the property into two tracts of land, the use of the underground sewer line by the Dominant Property was not apparent, continuous, or necessary to the use of the Dominant Property as there existed multiple septic tanks on the Dominant Property."

ALST Realty maintains the trial court did not err in finding an implied easement by prior use because testimony supported each element. As to the first element (unity of ownership), it is undisputed that Tomlinson owned both the Dominant and Servient Property. As evidence of element two (use of the easement at the time of the severance) and element three (continuous use of the easement by the Dominant Property), ALST Realty offered the testimony of Webb. Webb testified that he knew the developer, Tomlinson, and Webb watched the installation and preparation of the property for the water and sewer lines. He testified how Tomlinson installed the water line and sewer line in close proximity to each other. Webb recounted personal conversations with Tomlinson about the lift station to provide sewer service to his businesses. "[Tomlinson] said he had to have a lift station to provide sewer for his businesses." Webb testified that only a sewer line could handle the sewage from the business district located on the Dominant Property and the sewage from the residential improvements also located on the Dominant Property. Webb further testified there were no septic tanks in use on the Dominant Property due to physical limitations of the size of the Dominant

8

Property. "There is no way a septic tank would hold—there is not enough room to have an active septic tank on that property."

Webb further testified that sewage from the Dominant Property always had been treated through the six inch sewer line going across the Servient Property. In fact, the trial court asked Webb a series of questions regarding the installation of the sewer line for the benefit of the Dominant Property by Tomlinson, when Tomlinson owned both the Dominant Property and the Servient Property. When the trial court inquired how Webb knew about the sewage prior to 2011, when Webb began leasing a space from Do, Webb responded:

> The Witness: Judge, I grew up in that area. I personally knew the developer and I know all about the construction about the facility and I know all about the lift station that Ronald Tomlinson had installed. And it's to Ronald Tomlinson's benefit to tie everything in because he owned all the properties.

Webb confirmed that "[t]here are no septic tanks on the [Dominant Property]." Webb acknowledged that there was an abandoned septic tank on the ALST Realty property, but the tank had not been used since Tomlinson developed the property. Webb clarified the prior use to the trial court, as follows:

> The Court: Are you telling me you have personal knowledge that since the property has been developed that the sewage from the Plaintiff's tract [Dominant Property] has always been tied into the main line going across the Defendant's tract [Servient Property] over to the lift?
>
> The Witness: That's what I'm saying, yes, sir, I was there during the development and it's always been tied to the lift station.

The underground sewer lines running under the Dominant Property and the Servient Property all the way to the lift station property are "apparent" if their existence "is indicated by signs which might be seen or known on a careful inspection by a person ordinarily conversant with the subject." *See Westbrook v.*

9

*Wright*, 477 S.W.2d 663, 666 (Tex. Civ. App.—Houston [14th Dist.] 1972, no writ) (subsurface sewer line found to be apparent). As this court observed in *Westbrook*,

> The fact that subsurface installations might not be obvious to a stranger to the transaction upon casual observation will not necessarily defeat the requirement of apparency. In *Wiesel v. Smira*, 49 R.I. 246, 142 A. 148, 150 (1928), the Court was confronted with a similar circumstance and stated that although the sub-surface pipe was not visible, clearly the appliances connecting with and leading to it were obvious and disappearance of waste from the houses involved was plain. 'Apparent' in instances involving sub-surface installations that are installed to avoid being seen can not [sic] be considered to be synonymous with 'visibility.' 1 Thompson on Real Property 474, Sec. 368 (1st ed. 1924).

*Id*.

The fact finder is the sole judge of the credibility of the witnesses and the weight to give their testimony. *City of Keller*, 168 S.W.3d at 819–20. Webb's testimony established the second and third elements for finding an implied easement by prior use. Other than unsupported criticism about what Webb could have known as a young man growing up in the area and observing Tomlinson develop the property, and the repeated argument that there were septic tanks on the Dominant Property, MTNV does not offer any evidence that contradicts Webb's testimony as to the establishment of the sewer line on both tracts of property and that the sewer line was needed at all times to process sewage from the Dominant Property. The trial court concluded that Webb's testimony that Tomlinson set up the sewer line for the benefit of the Dominant Property was credible and proved continuous use after the severance of the Servient Property from the Dominant Property.

The trial court heard conflicting testimony on the existence of septic tanks. The trial court heard testimony from Webb that the Dominant Property could not

have used septic tanks to process all the sewage produced by the Dominant Property, and that the sewage from the Dominant Property has been tied into the sewer line located on the Servient Property since the property was developed by Tomlinson. Susan Vu testified that Do was using a septic tank until she illegally tied in to the Servient Property sewer line. The trial court resolved the inconsistent testimony with its findings that it was not economically feasible for the Dominant Property to tie into the Greenwood Utility District except via the sewer line under the Subservient Property, that the Dominant Property cannot process all its sewage by septic tanks located on the property, and that any prior septic tank was for a prior building and not related to the installation of the sewer line installed on the Dominant Property and Subservient Property by Tomlinson. It is the province of the fact finder to resolve conflicts in the evidence. *City of Keller*, 168 S.W.3d at 819–20

Finally, as to the fourth element, ALST Realty provided testimony at trial to prove that the easement is reasonably necessary to fair use of the Dominant Property. A principal of ALST Realty, Harm Dieter Liebich, testified that the Dominant Property needs to have continued access to the sewer line easement to process sewage from the Dominant Property; otherwise, ALST Realty could not do anything with the Dominant Property. Webb also testified that if the sewage could not be treated by sending it through the sewer line on the Servient Property, it would create a hazardous condition and be a health and safety concern. As set forth, *supra*, Webb testified that there is not enough room on the Dominant Property to install septic tanks to handle the sewage.

We conclude the evidence at trial supported the trial court's findings of fact and conclusions of law as to the establishment of the four elements necessary for a

11

prior use easement in favor of ALST Realty to use the sewer line on the Servient Property. *See Hamrick*, 446 S.W.3d at 383.

MTNV's first issue is overruled.

## B.      Admission of Evidence

In its second issue, MTNV argues that Webb's testimony related to Tomlinson should have been excluded as hearsay (Texas Rules of Evidence Rule 801(d) and/or under Rule 601 of the Texas Rules of Evidence (the "Dead Man's Rule")).[5] We review evidentiary rulings for abuse of discretion. *Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 728 (Tex. 2016).

MTNV did not object at trial as to the statements made by Tomlinson to Webb:

> Q.      (By Mr. Smith): Did you have any personal conversations with Mr. Tomlinson about the MUD District going on out there?
>
> A.      He only said he had to have a lift station to provide the sewer for his businesses.
>
> Q.      When he was saying that, did he own both the Plaintiff's Property and the Defendant's property together?
>
> A.      The best of my knowledge, yes, sir, he developed both properties.

To preserve a complaint for review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired

---

[5] The "Dead Man's Rule," provides in relevant part:

(1) Applicability. The "Dead Man's Rule" applies only in a civil case:

    (A) by or against a party in the party's capacity as an executor, administrator, or guardian; or

    (B) by or against a decedent's heirs or legal representatives and based in whole or in part on the decedent's oral statement.

Tex. R. Evid. 601(b).

ruling, if it is not apparent from the context of the request, objection, or motion. *See* Tex. R. App. P. 33.1(a)(1). When a party fails to do so, error is not preserved, and the complaint is waived. *See Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991). MTNV failed to object to Webb's testimony at trial; thus, MTNV failed to preserve error and cannot complain about this testimony for the first time on appeal.

To the extent MTNV asserts that the testimony is prohibited under the "Dead Man's Rule," MTNV is mistaken. This rule of evidence is construed narrowly and is only applicable when the civil action is "*by or against executors, administrators, or guardians.*" Tex. R. Evid. 601(b) (emphasis added); *see also Seymour v. Am. Engine & Grinding co.*, 956 S.W.2d 49, 55 (Tex. App.—Houston [14th Dist.] 1996, writ denied). Rule 601(b) has no applicability to the lawsuit between ALST Realty and MTNV because the parties being sued are individuals and entities, not executors, administrators, or guardians. *See id.* (citations omitted) (determining factor capacity in which parties sued). As such, MTNV's contention is without merit.

MTNV's second issued is overruled.

## C.    Permanent Injunction not an abuse of discretion

In its third issue, MTNV maintains the trial court abused its discretion in granting ALST Realty a permanent injunction in the absence of a pleading requesting such relief. MTNV asserts that the trial court did not have authority to enjoin MTNV from interfering with the easement rights of ALST Realty.

Contrary to MTNV's contention, ALST Realty's petition put MTNV on notice that ALST Realty was seeking a "temporary injunction and injunction in this lawsuit." ALST Realty set forth the grounds to enjoin MTNV from severing

13

the Dominant Property access to the sewer lines. Additionally, ALST Realty made MTNV aware that it was seeking a declaration of its rights in the easement and further sought to quiet title to the easement. MTNV was aware ALST Realty was seeking to use the sewer line without interference, based on ALST Realty's prayer in its Petition, and by MTNV's counterclaim threatening to cut off access to the sewer lines used by ALST Realty.

The purpose of pleadings is to give the parties notice of claims, defenses and the relief sought. *Perez v. Briercroft Serv. Corp.*, 809 S.W.2d 216, 218 (Tex. 1991). When a defendant pleads a defense that contemplates a particular remedy, despite the plaintiff not having specifically requested such relief, the pleading notice requirement is met, and defendant cannot claim the relief sought is not at issue. *See id.* The propriety of a remedy depends not on the specific relief sought but on the facts pleaded and proven. *See Holmstrom v. Lee*, 26 S.W.3d 526, 533 (Tex. App.—Austin 2000, no pet.).

When the trial court found that an implied prior use easement existed for the sewer line, it is a logical conclusion that MTNV is precluded from interfering with the easement rights of ALST Realty. *See Dry v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 207 (Tex. 1962). Thus, the trial court did not abuse its discretion in granting this remedy.

The appellant's third issue is overruled.

**D.      Trial court properly found no liability against third-party Do**

In its fourth, alternative issue, MTNV contends the trial court erred as a matter of law in finding third-party defendant Do not liable to MTNV for the damage to the sewer line and/or water line which broke in 2013.

In its pleading, MTNV brought suit against Do seeking a declaratory judgment that Do never had an easement while she owned the Dominant Property, and that Do illegally trespassed on MTNV's property to tap into MTNV's sewer line, causing MTNV to suffer economic damages.  MTNV also sued Do to recover attorney's fees and court costs. The trial court found "Do did not trespass illegally on the property of MTNV, INC to tap into the sewer line.  Based on the testimony from the witnesses at trial, the Court found no credible evidence to support allegations of trespass."  The trial court further found "no ground for MTNV, INC. to seek declaratory judgment against TUOI DO for any purported wrongful conduct by TUOI DO." MTNV does not challenge either finding.  Instead, MTNV asserts an alternate argument that was neither pled nor tried by consent—that Do had a maintenance and repair responsibility as owner of the Dominant Property and Do's alleged negligence of maintenance and repair when the water line broke in 2013 resulted in $5,000.00 in property damages to MTNV for which it seeks reimbursement.  Because MTNV did not plead the issue and it was not tried by consent, MTNV has failed to demonstrate an abuse of discretion by the trial court.

As such, MTNV's fourth issue is overruled.

### III. Conclusion

The judgment of the trial court is affirmed.

/s/     Margaret "Meg" Poissant
          Justice

Panel consists of Justices Christopher, Hassan, and Poissant.